(Decided April 19th, 1895.)

---

## CHARLES H. CLASSEN AND LYDIA H. HOWARD vs. THE CHESAPEAKE GUANO COMPANY.

*Wharves and Piers—Right to make Improvements into Navigable Water—Vested Rights to Wharves Under Ordinances.*

The municipal corporation of Baltimore City is empowered by the Legislature to establish the lines within which wharves may be built or improvements made into navigable waters within the city limits.

Where a party is authorized by a municipal ordinance to build out certain piers to the Pier Head Line, and such right has not been exercised before the passage of a subsequent ordinance establishing different lines within which piers may be built, the latter ordinance is a revocation of the privilege granted by the former.

Plaintiff and defendant were owners of adjoining lots of ground fronting on navigable water, in the city of Baltimore, at a point where the shore is concave. In 1880 the defendant was authorized by ordinance to erect a solid wharf in front of his lot the full width thereof, to the Bulkhead Line, and also two piers from the Bulkhead Line to the Pierhead Line. Defendant erected the wharf, but did not build said piers. In 1881 another ordinance was passed, which was accompanied by a map, establishing the lines within which permits for pier or bulkhead extensions should be granted to the owners of lots on this shore. According to the lines thus established, a part of defendant's solid wharf was within the lines allotted to the plaintiff on the Bulkhead Line, and the piers authorized by the ordinance of .880, if constructed, would be almost wholly within the Pierhead Lines of plaintiff's lot. Plaintiff claimed that defendant was a tres-

passer so far as the wharf was concerned, and that defendant should be enjoined from erecting said piers.  *Held,*

1st.  That defendant was entitled to maintain his wharf to the Bulkhead Line, since the privilege to erect it became a vested right by having been acted upon before the passage of the second ordinance.

2nd.  That the plaintiff was entitled to an injunction to restrain the erection of piers by the defendant beyond the Bulkhead Line, since the privilege to do so, given by the ordinance of 1880, was subject to revocation before being acted upon, and the ordinance of 1881 was a revocation thereof.

3rd.  That the defendant now has a right to build piers to the Pierhead Line, taking so much of that line as is allotted by the map of 1881 to the plaintiff, as is in proportion to the defendant's acquired right on the Bulkhead Line ; and that plaintiff's right to the Pierhead Line is to be measured by his frontage on the Bulkhead Line according to the map, diminished by so much thereof as is occupied by defendant's wharf.

Appeal from a *pro forma* decree of Circuit Court No. 2, of Baltimore City, by which it was adjudged that "the defendant has a right to maintain its bulkhead as at present constructed within the line, constituting the southeast boundary of defendant's property, extended by a straight line southeasterly to the bulkhead line, and for the purpose of constructing piers, has the right to extend the line now constituting the southeast boundary of the defendant's lot, in a straight line southeasterly, until it reaches the Pierhead Line laid down upon Plat No. 4, of the maps referred to in Ordinance No. 83, of the ordinances of 1881, approved May 17th, 1881.   And that the plaintiffs are not entitled to an injunction."

The plat referred to in this decree is as follows :

Copy of Exhibit " C " filed in the case of Classen & Howard *vs.* Chesapeake Guano Co., Circuit Court No. 2, Baltimore city.

Red lines in original plat shown on the copy by heavy black lines.

The cause was submitted to the Court below upon a special case stated under the 47th General Equity Rule, which set forth the titles of the parties to their lots, and the various ordinances of the Mayor and City Council of Baltimore, referred to in the opinion of this Court, and the Court was asked to determine whether the erection of part of the bulkhead upon the southeasterly side of the red line laid down in " Exhibit C " constitute a trespass, and as to whether a perpetual injunction will be granted to prevent the defendant from erecting piers, or otherwise using any property within what is herein claimed to be the plaintiff's lines, as laid down in said plat, " Exhibit C," and enjoining and requiring the removal of the bulkhead erected on behalf of the defendant, in so far as it has been constructed within what are herein claimed to be the plaintiff's lines.

The cause was argued before Robinson, C. J., McSherry, Briscoe, Page and Roberts, JJ.

*George R. Willis* and *Charles Morris Howard* for the appellant.

The right of the State Legislatures to establish wharf or harbor lines is too well established to cause any doubt. *State* v. *Sargent*, 45 Conn. 358 ; *Commonwealth* v. *Alger*, 7 Cush. 81.

The mere establishment of a harbor or dock line is not an abandonment of the right of the State to control and regulate the waters within the line. *Webber* v. *Harbor Commissioners*, 18 Wall. 57 ; *Wilson* v. *Inloes*, 11 G. & J. 351 ; *Gould on Waters*, 2d edition, sec. 138. In defining the exact limits of the rights of the riparian proprietor at common law, on navigable tidal streams, there was found to be considerable diversity of opinion among Courts of high authority, as well as among the writers upon the subject. *Garritee* v. *M. & C. C.*, 53 Md. 432. The Legislature alone has the right to determine whether, and to what extent, the public convenience requires an interruption of the public

right of navigation. *Gould on Waters*, section 139 ; *Commonwealth* v. *Breed*, 4 Pick.; *Cape Elizabeth* v. *County Commisioners*, 64 Maine, 456.

Since 1745 there has been State wharf legislation with reference to the owners of shores along the water front in the city of Baltimore. The Act of 1745, chapter 9, section 10, which Act was supplemental to the Act of 1732, incorporating Baltimore Town, provided that " All improvements, of any kind whatsoever, either wharves, houses or other buildings, that have or shall be made out in the water, or where it usually flows, shall (as an encouragement to such improver) be forever deemed the right, title and inheritance of such improvers, their heirs and asigns, forever." Notwithstanding these strong expressions, the Court of Appeals of Maryland has held repeatedly that this Act does not create a vested right or an irrepealable grant, but it is a legislative privilege, which, unless acted upon and enjoyed, is repealable. *Casey* v. *Inloes*, 1 Gill. 430 ; *McMurray* v. *Baltimore*, 54 Md. 110 ; *Dugan* v. *Baltimore*, 5 G. J. 225 ; *B. & O. R. R. Co.* v. *Chase*, 43 Md. 23 ; *Harrison* v. *Sterett*, 4 H. & McH. 550; *Hazlehurst* v. *Baltimore*, 37 Md. 215 ; *Horner* v. *Pleasants*, 66 Md. 477.

It will be easily seen that the regulations laid down by the Mayor and City Council in the ordinance of May 17, 1881, under the authority of the Legislature, are much more definite, and, therefore, more just and equitable than the earlier provisions of the Act of 1745, chapter 9, and the Acts supplemental to it. The ordinance and surveyor's plats, which are a part of it, define with mathematical precision the lines within which the shore owners have the right to build bulkheads or piers. Previous to the ordinance there was no general legislation defining with accuracy the direction which the improvements should take. From the case of *Baltimore and Ohio R. R.* v. *Chase*, 43 Md. 23, it would seem that the Act of 1745, chapter 9, together with the Acts providing for the establishment of Port Warden's Lines, determined the extent of the improvements which

might be made, but not the direction of such improvements nor the boundaries between the respective shore-owners. While the right of the shore-owner to improve out from his property at a right-angle to his shore line is entirely just where the shore line happens to be a straight line, it is manifestly unjust where the shore line is concave, and if allowed might result in permitting the first occupant to encroach upon the natural boundary of his adjacent neighbor, and crowding him out (as it is sought to do in this case), leaving him without water-rights, and thus depriving his property of its value.

In 1876, the City Council passed a resolution (see Resolution No. 185, of April 22, 1876), directing the law officers of the city to give the " proper legal notices to all persons, firms, corporations * * * engaged in erecting piers * * * to discontinue all operations in that direction until plans, plats or diagrams of the proposed structure shall have been filed * * * and approved by the Mayor and City Council and permission be granted to erect the same in accordance with section 9." It is a part of this case, that, when the defendants erected their wharf or bulkhead, no plan of said wharf or bulkhead was laid before the Mayor and City Council, or any person authorized by them, nor was the consent of the Mayor and City Council, nor of the Joint Standing Committee on Harbor and the Mayor obtained to erect said wharf. It will thus be seen that the provisions of the laws above referred to have been violated by the defendants.

Ordinance No. 141, of October 6th, 1880, as well as the ordinance of June 8th, 1876, which it had repealed, enacted that said piers might be removed at any time after twelve months' notice by the Mayor, and that the expenses of said removal should be borne by the beneficiaries of the privilege. It is perfectly apparent, therefore, on the face of the ordinance, that no vested right was intended to be given, and that even if piers had been constructed under its authority, they might have been removed and the pier lines of shore-

owners might have been re-adjusted,    This being the case, the third section of the ordinance of May 17, 1881, which repeals all ordinances or parts of ordinances inconsistent with its provisions, and gives it effect from the date of its passage, would clearly leave the defendant without any legal warrant for the proposed action of building piers outside the lines prescribed for him by that ordinance.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellee, cited: *Dugan* v. *M. & C. C. of Balto.*, 5 G. & J. 367 ; *Wilson* v. *Inloes*, 11 G. & J. 351 ; *B. & O. R. R. Co.* v. *Chase*, 43 Md. 23 ; *M. & C. C. of Balto.* v. *St. Agnes Hospital*, 48 Md. 421 ; *Garritee* v. *M. & C. C.*, 53 Md. 432-436 ; *Horner* v. *Pleasants*, 66 Md. 475 ; *Yates* v. *Milwaukee, &c.*, 10 Wall. 504, 508 ; *Railway Co.* v. *Rennick*, 102 U. S. 180, 183 ; *St. Louis* v. *Meyers*, 113 U. S. 567 ; *Yesler* v. *Washington Harbor Line Commissioners*, 146 U. S. 646, 656 ; *Dashiell* v. *Baltimore*, 45 Md. 622, *Appeal Tax Court* v. *Patterson*, 50 Md. 375.

BRISCOE, J., delivered the opinion of the Court.

The appellants are the owners of a lot of ground fronting on the Patapsco River, in the city of Baltimore, and the appellee is the owner of the adjoining lot on the west, likewise fronting on the river.    The shore line of the river is concave, so that if some of the riparian owners should build out wharves or piers in straight lines the full width of their lots to the Pierhead, or Port Warden's Line, other riparian owners would be deprived of the privilege of building piers to the Pierhead Line, since the water front on the Pierhead Line is much less in extent than the shore line in the rear.

In 1876, Joshua Horner, who then owned the appellee's lot, and also the lot now adjoining on the west, was authorized by the Mayor and City Council, by Ordinance No. 114 of that year, to erect a bulkhead and piers in front of his lot.    By Ordinance No. 141 of 1880, approved October 6, 1880, the ordinance of 1876 was repealed and re-enacted,

to grant permission to the heirs of Joshua Horner to erect said bulkhead and piers.

The heirs of Horner, in August, 1880, agreed to sell to the appellee a portion of the lot referred to in these ordinances, fronting 150 feet on Gould street, and running to the Port Warden's Line, and, as a part of the consideration, agreed to build a solid bulkhead to the bulkhead line. And this bulkhead was constructed under the above-mentioned ordinance between October 6th, 1880, and January 6th, 1881, extending the whole width of the appellee's lot, and running out in straight lines to the bulkhead line.

Subsequently Ordinance No. 83 was passed and approved on May 17th, 1881, establishing certain pier and bulkhead lines in the harbor of Baltimore City. It recites in its preamble that, " Whereas it has become evident that further legislation is necessary to enable the Mayor and City Council, with equity to the riparian owners and to the public interest, to grant permits for pier or bulkhead extensions in such portions of the harbor as the shore line may be concave or hollow, or where it forms sharp re-entrant angles, so that the water front, measured on the pier or bulkhead lines, is much less in length than the shore line in the rear," and then enacts as follows : " That, from and after the passage of this ordinance the lines marked and shaded in ' red ' in the maps numbered from 1 to 5, submitted this day by the Joint Standing Committee on Harbor, be and are hereby declared to be the pier and bulkhead lines, beyond which no extension of piers or bulkheads shall be made in the portions of the harbor to which said maps relate."

Now, it appears that the southeast part of the appellee's solid bulkhead, or wharf, is within the lines of what would would be appellant's lot if extended according to the ordinance of 1881, and that the piers authorized in front of the appellee's lot by the ordinance of 1880, would be, if constructed almost wholly within the lines of the appellants' lot extended to the Pierhead or Port Warden's Line. And upon the case as thus stated the Court was asked to declare

the erection of the appellee's bulkhead a trespass and to enjoin it from constructing piers to the pierhead line.

There can be no question, it seems to us, that the appellee has the right to maintain its wharf or bulkhead in front of its lot to the bulkhead line. The Patapsco River in the city of Baltimore is a navigable stream, and the power of the Legislature, or of the municipality under its authority, to establish the lines within which wharves may be built or other improvements made into the water cannot be disputed. *Brown* v. *Kennedy*, 5 H. & J. 195 ; *Hess* v. *Muir*, 65 Md. 586. In the case of *B. & O. R. R. Co.* v. *Chase*, 43 Md. 23, this Court said, that by the construction of the Act of 1745, chapter 9, sec. 10, as settled by the decisions of our predecessors, the right of the lot owner, fronting on the water, to extend his lot or improve out, to the limit prescribed by the authorities of the city, is a franchise, a vested right peculiar in its nature, but a *quasi* property of which the lot owner cannot be lawfully deprived without his consent. And if any other person without his authority make such extension, no interest or estate in the improvement vests in the improver, but it becomes the property and estate of the owner of the franchise. And in *Horner* v. *Pleasants*, 66 Md. 475, it was distinctly held that where a wharf is built by a riparian owner under a statute authorizing such improvement he is entitled to the perpetual use of the land covered by water for the wharf. But under statutes now in force in Baltimore City, the Mayor and City Council are authorized to prescribe the extent and mode within which riparian owners may make improvements in front of their lots, and when they bound upon a concave shore to declare what the front of a particular lot shall comprehend upon the Bulkhead or Port Warden's Line. *Balto. City Code*, Articles 343 and 351. Now, in this case, the wharf of the appellee, built out to the bulkhead line, was actually constructed prior to the ordinance of 1881, and under the ordinance of 1880, and the right of the appellee to maintain it cannot now be questioned by the appellants.

We come now to the second question, as to the right of the appellee to build the piers authorized by the ordinance of 1880, to the pierhead line. It will be observed that no piers were erected during the time the ordinance of 1880 was in force, nor down to the institution of this suit.

It is contended by the appellee that the ordinance of 1881 " does nothing but define the pier and bulkhead lines, the reasonable interpretation of which is that the heavier lines marked Bulkhead Line and Pierhead Line are the lines meant to be established." But we think when this ordinance is considered in connection with the preamble and the map ordered it to be placed on file in the office of the Harbor Board, it is clear that its design was to give each of the owners along this concave shore a right to so much of the bulkhead and pierhead lines in front of their respective lots, as is comprehended within the red lines on said map, traversing in a southerly direction the bulkhead line. The effect of this ordinance was to abrogate, so far as these parties are concerned, any right which the appellee may have as the elder grantee and to give all these riparian owners equal rights to make improvements within the lines prescribed by the ordinance to the Pierhead or Port Warden's Line.

But it is manifest since the right to build piers beyond the bulkhead line conferred by the ordinance of 1880, has not been exercised, the appellee has no vested right in the same. It was a privilege subject to revocation at any time before it was acted upon, and the ordinance of 1881, which repealed all ordinances inconsistent therewith was a revocation of this privilege. *Casey* v. *Inloes*, 1 Gill, 430; *Giraud* v. *Hughes*, 1 G. & J. 249; *Linthicum* v. *Coan*, 64 Md. 453. The appellants were therefore entitled to an injunction restraining the appellee from constructing piers beyond the bulkhead line, according to its contention, as being in front of the appellant's lot.

And to allow the appellee in this case to improve out in a straight line, the shore line being concave, would permit

it to shut off and almost entirely deprive the adjacent lot owners, the appellants here, of water frontage and rights on the Pierhead or Port Warden's Line. Inasmuch, however, as the appellee acquired, by building its wharf under the ordinance of 1880, a vested right to a part of the bulkhead line, which has been allotted by the ordinance of 1881 to the appellants, the Chesapeake Guano Company now has a right to build piers to the pierhead line, taking so much of the pierhead line in front of the appellant's property (as laid down in the plat), as will bear the same proportion to the whole of said line, as the part of the bulkhead line acquired by the appellee bears to the whole bulkhead line in front of the appellant's property, such piers to be built according to the converging lines, in the direction of the lines laid down in the ordinance of 1881.

And the right of the appellants to extend to the pierhead line is to be measured by their proportion of frontage of the bulkhead line, diminished by that part occupied by the wharf of the appellee.

It follows, then, that the *pro forma* decree appealed from will be affirmed in part and reversed in part, and the cause remanded to the end that a decree may be passed in conformity with this opinion. Each party to pay one-half of costs in this Court and the Court below.

> *Decree affirmed in part and reversed in part. Each party to pay one-half of costs.*

(Decided April 19th, 1895.)