# BALTIMORE CITY COURT.

Filed January 25, 1906.

## MAYOR AND CITY COUNCIL OF BALTIMORE
### VS.
## BALTIMORE AND PHILADELPHIA STEAMBOAT COMPANY.

*Edgar Allan Poe, Joseph S. Goldsmith* and *Sylvan H. Lauchheimer* for Mayor and City Council of Baltimore.

*Richard M. Venable* and *Thomas F. Cadwallader* for Baltimore and Philadelphia Steamboat Company.

STOCKBRIDGE, J.—

This appeal is taken with regard to four items, three of them damages allowed and one benefits assessed, in the award of the Burnt District Commission for the widening of Pratt street eastwardly from Light.

The action of the Commission with regard to lot "C" on Plat No. 25 (the condemnation plat) will be affirmed. The property for which this award is made is too far removed from the rights claimed by this appellant in connection with the wharfage right, to which in the view of the court it is entitled, upon the east side of Light street, to make it a subject-matter for an award of damages to this appellant.

The assessments of benefits against this appellant, for benefits to accrue to the lot of the appellant to the south of the proposed improvement, must be set aside. The only evidence offered as bearing upon this was that of witnesses called by the appellant, and all of it tended to negative the idea of any benefit whatever to result to the lot on which it was assessed.

The questions of real difficulty are those which arise with regard to the awards of damages made for the lots designated as "A" and "B" on the Condemnation Plat.

The division of the lots "A" and "B," as made by the Commission, was purely artificial—one which seems to the court as erroneous, and as made to present a condition where no logical or clearly intelligible valuation of the property rights involved can be made. Therefore, the two lots included under the designations "A" and "B" by the Commission, will be treated as one lot, and the relative rights of the appellant and the city therein, and the nature of those rights, and the effect upon them of the proposed improvement considered together.

The south side of Pratt street and the east side of Light at their junction form approximately a right angle, the actual angle being 86 degrees 6 minutes. The city holds the Pratt

street or northern side of the basin for the purposes of a highway and public wharf, and the appellant by reason of its ownership of the property on the west side of Light street is entitled to certain wharf rights on the east side of Light street or along the western water front.

The present improvement contemplates the widening of Pratt street on its southern side fifty feet, and thereby certain wharf rights of the appellant will be taken. These wharf rights extend fourteen feet from east to west, and fifty feet one and one-half inches from north to south. The appellant's claim of fifty-four feet six inches in this dimension is not sustained in view of the proceeding taken under the Act of 1817 for the opening of Pratt street eastwardly from Light street.

In addition to this the water frontage of the appellant in these fifty feet will be destroyed.

A further element of damage alleged is what the appellant claims is its right to have its vessels extend along Pratt street, though the right to load or unload goods on that side is not claimed as a matter of right, but this privilege has formed at least an element in the rental of $3,600, paid by the appellant yearly to the city. For such taking and injury the steamboat company, the appellant, claims to be awarded compensation, while the city claims by reason of its present ownership of Pratt street, acquired in 1817, for the double purpose of a highway and the maintenance of a public wharf, that it is entitled to compensation.

Each of the claimants insists that it possesses rights superior to the other, the city, by reason of an alleged prior grant, and the Act of 1817, and the steamboat company, by reason of the provisions of the Acts of 1796 and 1805, under which, in consideration of the filling out of the part of the owners of lands lying to the west of the basin, it was provided that they should be "entitled solely and exclusively to the emoluments arising from the wharfage thereof." The validity of these statutes has been more than once upheld by the courts.

At the very outset it is to be observed that what the Legislature granted was not a right of exclusive occupancy of the water by vessels outside of, and beyond the filling out done, or wharves built under the provisions

of the act, even if the Legislature had power to make such a grant, which is by no means clear.

Illinois R. R. vs. Ill., 146 U. S., 387, 455, 56, 57.

Coxe vs. State, 144 N. Y., 405.

But the Legislature did not grant a fee in the land under the wharves erected, but only a franchise therein.

Horner vs. Pleasants, 66 Md., 477.

The sole and exclusive grant was of the emoluments arising from the wharfage, and wharfage is defined by Bouvier (II Law Dict., 1226) as "the money paid for landing goods upon or loading them from a wharf." This right thus to collect "wharfage" is essentially different from a right to obstruct a navigable water by the mooring of a vessel in such a position as to cut off the access of an adjoining riparian owner to his own property.

Much was said in argument and in the brief filed in behalf of the steamboat company to the effect that the Legislature possessed the power to cut off the right of access of a riparian owner. But whether the Legislature possesses that right or not, it has not attempted to do so in the present case. It has only attempted to grant an exclusive right of wharfage. It is insisted, however, that the right of wharfage includes the right to dock and moor vessels, and that such has been the holding of the Maryland courts. If by this is meant that one who is entitled to the right to erect and maintain a wharf upon navigable water, and to collect charges from vessels which may make fast to such wharf and load or unload cargo, is likewise entitled to make fast his own vessels to such wharf for a similar purpose then the proposition is true; but if by this is meant that one in such a position is entitled so to use his wharf right as to destroy the right of an adjoining riparian owner to the like use of his own property, then it is untrue. For even if it be conceded for purposes of argument that the Legislature has the right to deny one riparian owner's right of access by water to his property for the benefit of an adjoining owner, so extraordinary an exercise of power could only result from express language, and would never be inferred by the courts, and express language to this effect is not contained in the Acts of 1796, 1801 or 1805.

What will be the results to the appellant from the proposed widening of Pratt street? There will be several.

1st. It will be deprived of the wharf franchise acquired by Calhoun upon his compliance with the provisions of the Acts of 1796 and 1805, and which by mesne conveyances has become vested in the steamboat company. This is a franchise in a lot 14 feet by 50 feet 1½ inches.

2nd. It will be deprived of any emoluments to arise from wharfage, in the strict use of that term as embodied in the grant. This, however, is a negligible quantity as there is no evidence to show that there have been any receipts from that source.

3rd. It will be deprived of the right to dock or moor vessels on any portion of the fifty feet taken for the widening, a distinctly valuable right, and one for which compensation must be made.

4th. It will be deprived of the right of access heretofore enjoyed by it over those fifty feet, also a right of value.

5th. It will work the extinguishment of the lease of a wharfage right on Pratt street, an element of value, but dependent as to the quantum of its value upon the length of the term of the lease.

6th. It will lose the improvements erected upon the Light Street wharf, built in the exercise of its franchise.

7th. It will lose the improvements erected by it upon the Pratt Street wharf, leased from the city, the value of which, however, may be materially lessened by the period which such lease has to run, or the conditions with regard to removal under which the same were erected.

How does it stand so far as the city is concerned? Up until 1817 the city had as a corporation enjoyed no rights upon this northern side of the basin. By the act of that year it was empowered to acquire rights by condemnation for the purposes of a highway and "public wharf." There was in this case no attempt to give to the city any exclusive rights over navigable waters, or to deny the right of access of adjacent riparian owners.

Unless there be some right resultant to one or the other of the parties to this litigation, therefore, growing out of a priority of grant, the rights of the adjoining owners, the city and the steamboat company were equal, though the value of those rights may have been affected as to each by the right of access enjoyed by the other. Each was entitled to the rights belonging to a riparian owner, and subject only in such right to the limitation that the right enjoyed by the one should not be so used as to destroy the exercise of a similar right by the other.

The doctrine as to superior rights inhering in the senior patentee does not seem to me to apply in the present case.

Each party, it is true, held by virtue of a grant from a common grantor, the State, but the grant of the State was within clearly defined lines, and for express purposes, which in each case involved a right of access over navigable waters. The parties were in exactly the position of adjoining riparian owners, entitled to such rights and subject to such restrictions as the law applied in such cases, and none other.

And herein is the essential difference from the Classen case, 81 Md., 258. There upon a concave shore the city had undertaken in the exercise of a delegated authority to adjust upon an equitable basis, the converging lines of adjoining owners, and it was there held that the city was entitled so to act, in the exercise of a specially delegated power.

But what will be the position of the city when the contemplated widening shall have been made? Its line bounding on the water will have been moved fifty feet to the south, but it will still be a riparian owner, and entitled to all its rights as such, including its right of access by water. It will be entitled to charge and collect wharfage for all goods loaded or unloaded at its new water front, and the mere removal of of its water line for a distance of fifty feet is too intangible an element of damage for the award of compensation. It will lose an existing lease running from year to year, yielding a rental of $3,600, but will have in lieu of it, a water front of equal extent, upon a widened street, which should be at least of equal value for rental purposes.

When it comes to the valuation of the various elements, which have been referred to, the different witnesses who have testified, have given estimates starting from widely different prem-

ises; thus the witnesses, Williams, Thompson, Groves, Cadwallader and White, all apparently place their estimates upon the basis of a right of user in the appellant to the exclusion of any right of user by the city of its water frontage; while the witnesses, Bernard, Lindsay and Caughy, value the strip 14 feet by 50 feet, on the theory of an ownership in fee, instead of in a franchise, although the last three named, practically give a valuation of riparian rights, both upon the theory of an equal right of user by the steamboat company and the city, and also upon the theory of an exclusive right in the appellant, which was apparently the basis of the steamboat company's witnesses.

In the view of the Court it is impossible to segregate for purposes of valuation the franchise right of wharfage, the right of the appellants to dock its own vessels at such wharf, and the right of access to such wharf over navigable water. These must be made the subject of one entire valuation, and taking them all into consideration, as also the right of access to its property to which the city is entitled, that valuation will be placed at $25,062.50.

For the improvements erected upon the wharf built upon the Light street franchise, there will be an additional allowance to these appellants of $1,500.

For the extinguishment of the lease from the city, under which a right of wharfage is enjoyed upon Pratt street, there will be a still additional allowance of $1,200.

The improvements upon the Pratt street wharf, as leased from the Mayor and City Council, have cost the appellant somewhere between $3,500 and $4,000. The allowance for these, however, must be slight. The amount, if any, of depreciation in them has not been testified to by any witness; but they are erected on premises held under a yearly lease, and as such are liable to be rendered valueless except for old material, at the termination of any year, and an allowance of $400 seems a liberal one; or a total award of damages to the appellant for its property rights, taken or destroyed, of $28,162.50.

As already indicated, in the view of the Court, the damages to the Mayor and City Council are nominal only, and therefore the award to it, for its property rights destroyed by the pro-

jected improvement will be the sum of five dollars.

The appellant has also insisted upon its right to consequestial damages, claimed to result to its remaining property. This claim must be entirely disallowed. It has been settled by a long line of decisions that when property is taken in the exercise of the right of eminent domain, the only damages which can be properly claimed or awarded are the actual damages suffered for the property taken. To go beyond that would be to embark on a sea of speculation and conjecture, where there is no possible guide or standard for the establishment or limitation of any award.

In furtherance of the views expressed, the first, second, fourth, fifth and seventh prayers of the appellant will be granted, and the third, sixth and eighth refused, and an inquisition signed in accordance with the foregoing opinion.