## GRING *v.* IVES.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH
CAROLINA.

No. 115.   Submitted December 18, 1911.—Decided January 9, 1912.

The act of March 3, 1899, c. 425, § 10, 30 Stat. 1121, 1151, authorizing
establishment of harbor lines was not intended, and did not operate,
to paralyze all state power concerning structures of every character
in navigable waters within their borders, or to automatically destroy
property rights previously acquired under sanction of state author-
ity. . *Cummings* v. *Chicago*, 188 U. S. 410.
In this case the Federal question relied upon is so absolutely without
merit, and the grounds are so frivolous, as not to afford a basis for
exercise of jurisdiction, and the writ of error is dismissed.
Writ of error to review 150 Nor. Car. 137, dismissed.

THE facts are stated in the opinion.

*Mr. James A. Toomey* for plaintiff in error:

The record as a whole shows clearly that the claim of
Federal rights was asserted from the beginning by the
plaintiff in error in such manner as to bring it to the
attention of the lower court.   The paramount right of
navigation in navigable waters was claimed, and it was
maintained that any obstruction to navigation without au-
thority from Congress or the legislature was unlawful, con-
stituted a public nuisance, and was a direct violation of the
provisions of §§ 9–12 of the River and Harbor Act, March 3,
1899, 30 Stat. 1151.   It further appears from the record
that the right, privilege and authority claimed under the
aforesaid act of Congress were denied by the court below,
and consequently this court has jurisdiction.   *Appleby* v.
*Buffalo,* 221 U. S. 524; 172 U. S. 67.

The substantial question presented is whether the lower

court erred in refusing to instruct the jury that defendants in error, upon all the evidence, could not recover, because the acts of negligence complained against were not the proximate cause of the injury, but that the efficient and proximate cause of said collision and consequent damage was the maintenance by the defendants in error of a public nuisance in a navigable river of the United States, expressly contrary to and in violation of a Federal statute.

The Pasquotank river is a navigable stream, and the defendants in error were not affirmatively authorized by Congress or by any legislative power to construct or maintain a marine railway or any other structure extending into that river one hundred feet beyond the harbor line shown to have been established by the Secretary of War pursuant to the act of Congress. The collision occurred at nighttime at point 36 feet outside the harbor line so established, where the water was 25 feet deep and navigable. The lower court held as a matter of law that whether there was a harbor line or not, the marine railway was a necessity for the repair of vessels, and that it was not shown to be located there illegally or to be a public nuisance.

This doctrine is a denial of the validity and legal effect of the United States statute hereinbefore set forth, and is at variance with decided cases. *Hannibal Bridge Company* v. *United States*, 221 U. S. 194.

If defendants in error had complied with the statute and had not placed an obstruction in a navigable stream, the accident would not have happened. *Atlee* v. *Packet Co.*, 21 Wall. 389; *Grand Trunk Ry.* v. *Backus*, 46 Fed. Rep. 216; *Northern Pacific Ry.* v. *United States*, 44 C. C. A. 136; see also cases reported at 38 Fed. Rep. 614; 9 N. J. Eq. 526; 28 N. Y. 396; 72 Maine, 181; 18 Barb. (N. Y.) 277; 9 Can. Sup. Ct. 239; and cases cited in 90 L. R. A. 59, note 7.

*Mr. E. F. Aydlett* for defendants in error:

Establishment of harbor lines can only be shown by proof of the ordinance, just as any other ordinance. The ordinance not being shown there is no proof.

Any obstruction beyond an established harbor line is not necessarily unlawful. The evidence shows this railway to have been constructed "some 18 years ago"; that referring to harbor line tends to show an establishment if any in 1902, 16 or 18 years after the construction of the ways. Such an ordinance has no retroactive effect and does not affect structures previously erected. 29 Cyc. 343 and 344 (b); *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 53.

Defendant would not be justified in recklessly or negligently running into even an unlawful obstruction.

In the absence of any specific legislation on the subject, riparian owners have a qualified property in the water frontage belonging by nature to their land, and a right to construct wharfs, piers, landings, etc., subject to such general rules and regulations as the legislature, in the exercise of its power, may prescribe for the protection of public rights in rivers or navigable waters. *Bond* v. *Wool*, 107 Nor. Car. 148. *Brainbridge* v. *Sherlock*, supra.

Railways of this character which are necessities of commerce and for repairing vessels, cannot be constructed without going under water and to deep-water mark. Otherwise vessels of deep draught could not be hauled out, and therefore the extension is necessary to a reasonable use of the same.

The rights of navigation while paramount are not exclusive, *Post* v. *Munn*, 7 Am. Dec. 570, and even granting that the railways were absolutely without warrant of law and therefore a nuisance and subject to abatement, parties must yet exercise care and cannot recklessly or wantonly injure them, for they are still private property and entitled to this degree of protection. 29 Cyc. 305, 311(h), 318; *The Brinton*, 66 Fed. Rep. 71.

Mr. Chief Justice White delivered the opinion of the court.

Gring, upon the theory that Federal questions were wrongly decided against him, seeks the reversal of a judgment for three hundred dollars, damages occasioned by the running of a tugboat, of which he was the owner, against a marine railway, the property of the defendants in error, who were plaintiffs below. The railway was situated on the shore of the Pasquotank river in the harbor of Elizabeth City, North Carolina. The injury to the railway was committed on the night of December 24, 1905. The Supreme Court of North Carolina, in affirming the judgment of the trial court, rendered on the verdict of a jury, stated these facts (150 Nor. Car. 137, 138):

The marine railway had been in existence for eighteen years prior to the injury complained of. The railway extended to the margin of the channel and between the end of the railway and the opposite side of the channel, which was buoyed, there was a space of 540 feet, constituting the usual highway for navigation. The night upon which the tug collided with the bridge was "a bright moonlight night and there was also a bonfire on shore and a line of electric lights which lighted up the harbor." The conduct which occasioned the running of the tug against the railway was thus stated: "The evidence is that the tugboat, which was bound down the river, instead of following the usual course, ran diagonally towards the shore, and striking the marine railway of plaintiffs, damaged it. The captain of the tugboat testified that he knew the locality well, having passed it more than two hundred times. After the injury he offered to pay damages, but the parties could not agree upon the amount." Commenting upon the facts thus stated, the court observed: "Clearly the proximate cause (of the injury) was the negligence of the tugboat in not proceeding on its course in a channel 540 feet

wide, but going several hundred feet out of its way and driving in shore against the marine railway."

In disposing of a contention concerning an alleged harbor line established under the act of Congress of March 3, 1899, c. 425, § 10, 30 Stat. 1121, 1151, and the proposition that the railway, because it projected beyond said assumed line, was a public nuisance, and therefore the complainant was entitled to negligently and wantonly injure it, the court said (p. 138):

"Whether there was a harbor line or not, the marine railway was a necessity for the repair of vessels. It was not shown to be located there illegally, or that it was a public nuisance; and if it had been, the tugboat was not authorized to run into it unnecessarily and negligently, as the evidence tended to show."

The only one of the assignments of error filed at the time this writ of error was sued out which in the remotest way relates to a Federal question is the third, which is concerned with the reasoning of the court just referred to and is based upon the assumption that there could be no recovery because of the asserted establishment by the Secretary of War some time between 1900 and 1902 of a harbor line under the authority of the act above mentioned. In argument the proposition to which the assignment relates is, that the court erred in not deciding that any structure projecting into the river beyond the established harbor line was illegal and a public nuisance which the plaintiff might wantonly injure or destroy. As we have seen, however, the court found as an undisputed fact that the railway in question was constructed and had been in operation many years before the establishment of the alleged harbor line. Under this condition the court was obviously right in holding that the railway had not been located in violation of the act of 1899 and was equally obviously right in deciding that the plaintiff had no right to recklessly injure it. The basis of the assumed Federal

right rests upon the plainly erroneous assumption that the act of 1899 was intended to or did operate to paralyze all state power concerning structures of every character in navigable waters within their borders, and to destroy automatically all vested rights of property in such works, even although acquired prior to the act of 1899 under the sanction of state authority. *Cummings* v. *Chicago*, 188 U. S. 410. See also *Lake Shore & Michigan Southern Ry. Co.* v. *Ohio*, 165 U. S. 365.

In view of the character of the case, the facts found by the court below and the absolute want of merit in the Federal question relied upon, we are of opinion that the grounds relied upon for review are of so frivolous a nature as not to afford the basis for the exercise of jurisdiction, and our decree therefore will be

*Dismissed for want of jurisdiction.*