## RIGHTS ENFORCIBLE IN STATE COURTS ARISING UNDER FEDERAL LAW.

Circuit Court of Lorain County.

MARGARET WARING, ADMINISTRATRIX OF THE ESTATE OF J. S. WARING, DECEASED, v. THE BALTIMORE & OHIO RAILROAD COMPANY.

Decided, April 19, 1912.

*Wrongful Death—Jurisdiction of Ohio Courts—In Action for Recovery for Death of a Citizen of Another State Killed in Another State— Federal Employers' Liability Act Confers Such Jurisdiction in Certain Cases—Section 10771, A. & P. Anno. General Code.*

The general rule that no action can be maintained in the courts of this state upon a cause of action for wrongful death occurring in another state, except where the person wrongfully killed was a citizen of Ohio, is so modified by the federal employers' liability act, of April 22, 1908, regulating the liability of interstate railway carriers for the death or injury of their employes while engaged in interstate commerce, as to permit the maintenance of such action by the proper representative of a deceased employe of an interstate railway carrier, though said employe was not a citizen of Ohio and was killed in some other state.

*C. W. Dille, Joseph L. Stern* and *F. M. Stevens,* for plaintiff in error.

*J. M. Lessick, Charles Lessick* and *H. C. Johnson,* contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

Error to the court of common pleas.

The plaintiff is a citizen of Pennsylvania, where she was duly appointed administratrix of the estate of her deceased husband, J. S. Waring, who at the time of his death was also a citizen of that state.

In her representative capacity, she brought suit in Lorain county, Ohio, for the benefit of herself, as widow, and the child of the deceased, against the railroad company, upon which due

service was made, to recover for the alleged wrongful death of her husband.

She alleged in her petition that the defendant was a common carrier by railroad, engaged in commerce between the states of Pennsylvania and West Virginia; that the deceased at the time of his death in January, 1910, was employed as a locomotive fireman on a passenger train then running between the cities of Pittsburgh, Pennsylvania, and Wheeling, West Virginia, and while so employed was killed in the state of Pennsylvania by the negligent acts of the officers, agents and employes of said carrier, for which wrongful death she prayed damages. Her petition showed a right to recover under an act of Congress relating to the liability of common carriers by railroad to their employes in certain cases, approved April 22, 1908, if that act is controlling in the case.

If the state law regulating such actions, then known as Revised Statutes, Section 6134a, is controlling, she was not entitled to maintain her action, for her decedent was not a citizen of Ohio at the time of his death, and the Supreme Court of this state, construing said section of the Revised Statutes in the case of *Railroad* v. *Chambers*, 73 O. S., 16, has said:

"No action can be maintained in the courts of this state upon a cause of action for wrongful death occurring in another state, except where the person wrongfully killed was a citizen of Ohio."

The common pleas court followed the Ohio legislative act and decision referred to, and sustained a demurrer to the petition. Its ruling in that respect is here for review, with the added light thrown on the subject by the decision of the Supreme Court of the United States in the case of *Mondou* v. *New York, New Haven & Hartford Railway Co.*, 32 Sup. Ct. Reporter, 169, decided by that court January 15, 1912, some ten days after the decision in the case under discussion. Unfortunately, each side in this controversy cites the Mondou case as in his favor. Paragraphs 7 and 8 of the syllabus of that case are as follows:

"7. The enforcement of rights under the employer's liability act of April 22, 1908, regulating the liability of interstate rail-

way carriers for the death or injury of their employes while engaged in interstate commerce, can not be regarded as impliedly restricted to the Federal courts, in view of the concurrent jurisdiction provision of the judiciary act of August 13, 1888 (25 Stat. at L., 433, chap. 866, U. S. Comp. Stat., 1901, p. 508), p. 1, and of the amendment made by the act of April 5, 1910 (36 Stat. at L., 291, chap. 143), to the original employers' liability act, which, instead of granting jurisdiction to the state courts, presupposes that they already possess it.

"8.   Jurisdiction of an action to enforce the rights arising under the employers' liability act of April 22, 1908, regulating the liability of interstate railway carriers for the death or injury of their employes while engaged in interstate commerce, may not be declined by the courts of a state whose ordinary jurisdiction as prescribed by local laws is adequate to the occasion, on the theory that such statute is not in harmony with the policy of the state, or that the exercise of such jurisdiction will be attended by inconvenience and confusion because of the different standards of right established by the congressional act and those recognized by the laws of the state."

Difficulty in the application of the law thus stated grows out of the use of the expression: "courts of a state whose ordinary jurisdiction as prescribed by local laws is adequate to the occasion."

For plaintiff it is urged that this means courts of general jurisdiction in which transitory civil actions, such as this one is, are cognizable, and that the common pleas court of Ohio is such a court.

Defendant claims that the common pleas court of Ohio is limited by local laws in its jurisdiction over actions for wrongful death occurring in another state, to those cases where the person wrongfully killed was a citizen of Ohio, and therefore, that the *jurisdiction* of said court is not adequate to this occasion.

Some support for this view is claimed in the following quotations from the opinion in the case, which was delivered by Mr. Justice Van Devanter:

"We come next to consider whether rights arising under the congressional act may be enforced, as of right, in the courts of the states *when their jurisdiction, as prescribed by local laws, is*

*adequate to the occasion.* The first of the cases now before us (the Mondou case) was begun in one of the superior courts of the state of Connecticut, and, in that case, the supreme court of errors of the state answered the question in the negative. That, however, was not because the ordinary jurisdiction of the superior courts, as defined by the Constitution and laws of the state, was deemed inadequate or not adapted to the adjudication of such a case, but because the supreme court of errors was of opinion: (1) that the congressional act impliedly restricts the enforcement of the rights which it creates to the federal courts; and (2) that, if this be not so, the superior courts are at liberty to decline cognizance of actions to enforce rights arising under that act, because (a) the policy manifested by it is not in accord with the policy of the state respecting the liability of employers to employes for injuries received by the latter while in the service of the former, and (b) it would be inconvenient and confusing for the same court, in dealing with cases of the same general class, to apply in some the standards of right established by the congressional act, and in others the different standards recognized by the laws of the state.

"Because of some general observations in the opinion of the supreme court of errors, and to the end that the remaining ground of decision advanced therein may be more accurately understood, we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the *jurisdiction* of state courts, or to control or affect their *modes of procedure,* but only a question of the duty of such a court, *when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion,* and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure. We say 'when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion,' because we are advised by the decisions of the supreme court of errors that the superior courts of the state (Connecticut) *are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that state, but also in cases where it arose in another state,* under its laws, and in circumstances in which the laws of Connecticut give no right of recovery, as where the casual negligence was that of a fellow servant."

The trouble with the application here sought to be made of the paragraphs quoted is that it fails to distinguish between laws conferring jurisdiction on courts, or the *power* and *authority* to administer remedies, and laws creating rights and remedies.

The Constitution of Ohio (Article IV, Section 4), provides that: "The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law"; and Section 11215 of the General Code provides that: "The court of common pleas shall have original jurisdiction in all civil cases where the sum or matter in dispute exceeds the exclusive original jurisdiction of justices of the peace," etc.

Here is adequate *jurisdiction* to hear and determine plaintiff's case, if she has any right of action. Of course, if she has no right of action in Ohio, then we say that the courts of Ohio have no jurisdiction to entertain her complaint, and thus we use the word "jurisdiction" in two senses. But the matter is made clear by further quotations from the opinion of Mr. Justice Van Devanter:

"The suggestion that the act of Congress is not in harmony with the policy of the state, and therefore that the courts of the state are free to decline jurisdiction, is quite inadmissible, because it pre-supposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own Legislature, and should be respected accordingly in the courts of the state. As was said by this court in *Claflin* v. *Houseman*, 93 U. S., 130, 136, 137; 23 L. Ed., 833, 839:

"'The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, paramount, sovereignty.  *  *  *  If an act of Congress gives a penalty (meaning civil and remedial) to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if

not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, not to be treated by each other as such but as courts of the same country, having jurisdiction partly different and partly concurrent. * * * It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by the Chief Justice Taney, in the case of *Ableman* v. *Booth,* 21 How., 506, 16 L. Ed., 169; and hence the state courts have no power to revise the action of the federal courts, nor the federal the state, except where the Federal Constitution or laws are involved. *But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.'* "

How then stands the law in Ohio today? When the Chambers case was affirmed by a divided court in the Supreme Court of the United States, Mr. Justice Moody said (207 U. S., 142, 147):

"There was no other statutory provision on the subject. The Supreme Court held that the *action* authorized by this statute for a death occurring in another state was only where the death was that of a citizen of Ohio; that the common law of the state forbade *such action;* and that as the person, for whose death damages were demanded in this case, was not a citizen of Ohio, *the action* would not lie."

It is quite evident, from a perusal of the several opinions in the Chambers case, that the courts did not doubt the adequacy of the jurisdiction of the courts of Ohio, but held that there was nothing in that case, no cause of action, for that jurisdiction to operate upon.

But now, in this case, we have another statutory provision on the subject, an act of Congress, which we are bound to recognize as operative within the state.

Quoting further from the Mondou case:

"True, prior to the present act, the laws of the several states were regarded as determinative of the liability of employers engage in interstate commerce for injuries received by their employes while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police power of the states in the absence of action by Congress. *Sherlock* v. *Alling,* 93 U. S., 99; 23 L. Ed., 819; *Smith* v. *Alabama,* 124 U. S., 165, 473, 480, 482; 31 L. Ed., 508, 510, 513, 514; 1 Inters. Com. Rep., 804; 8 Sup. Ct. Rep., 564; *Nashville, C. & St. L. R. Co.* v. *Alabama,* 128 U. S., 96, 99; 32 L. Ed., 352, 353; 2 Inters. Com. Rep., 238; 9 Sup. Ct. Rep., 28; *Reid* v. *Colorado,* 187 U. S., 137, 146; 47 L. Ed., 108, 113; 23 Sup. Ct. Rep., 92; 12 Am. Crim. Rep., 506. The inaction of Congress however, in nowise affected its power over the subject. The Lottawanna (*Rodd* v. *Heartt*), 21 Wall., 558, 581; 22 L. Ed., 654, 664; *Glouscester Ferry Co.* v. *Pennsylvania,* 114 U. S., 196, 215; 29 L. Ed., 158, 166; 1 Inters. Com. Rep., 382; 5 Sup. Ct. Rep., 826. And now that Congress has acted, the laws of the states, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is. *Gulf, C. & S. F. R. Co.* v. *Hefley,* 158 U. S., 98, 104; 39 L. Ed., 910, 912; 15 Sup. Ct. Rep., 802; *Southern R. Co.* v. *Reid,* No. 487, 222 U. S., —, ante 140; 32 Sup. Ct. Rep., 140; *Northern P. R. Co.* v. *Washington,* No. 136, 222 U. S., —, ante, 160; 32 Sup. Ct. Rep., 160."

Yielding, therefore, to the highest law of the land we hold that Revised Statutes, Sec. 6134*a,* now General Code, Sec. 10771, and the case of *Railroad* v. *Chambers,* 73 O. S., 16, no longer apply to an action for wrongful death of an employe occasioned by the negligence of a common carrier by railroad while engaged in interstate commerce. They are superseded by the paramount act of Congress.

As the Legislature of Ohio could amend Section 6134*a* of the Revised Statutes, and thereby change the rule laid down by the Supreme Court in the Chambers case, so the Congress of the United States, under the commerce clause of the Federal Constitution, can render inapplicable both the legislative act and the decision of the state court to such cases as come within the terms of the federal act, as this one does.

The judgment of the common pleas court is reversed, and the cause remanded, with instructions to overrule the demurrer to the petition, and for further proceedings according to law.