## WINFIELD S. CAHILL *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 90, October Term, 1937.]

*Decided January 13th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Isaac Lobe Straus,* for the appellant.

*Allen A. Davis, Assistant City Solicitor,* with whom were *R. E. Lee Marshall, City Solicitor,* and *James J. Doherty, Assistant City Solicitor,* on the brief, for the appellees.

*L. Vernon Williams,* by permission of the Court, filed a brief as *amicus curiae.*

BOND, C. J., delivered the opinion of the Court.

The owner of property on the southwesterly shore of the northwestern branch of the Patapsco River, part of the harbor of Baltimore City, appeals from a dismissal, on demurrer, of his petition for the writ of mandamus to compel the city officials to issue him a permit to fill in and build a wharf out from one portion of that property. The pierhead line established under city ordinances now in force coincides with the present shore line at the site, and the appellant claims a right to wharf out beyond it.

The petitioner's whole lot, or the only property of his which need now be considered, would, except for two interruptions, be an oblong strip extending westwardly from the southwest shore of the river. The water end of that strip, the southwest shore, cuts diagonally across the north and south lines of the lot. There is no legal restriction on the petitioner's wharfing out from that diagonal line as far into the stream as he proposes, but practical obstacles are alleged. Immediately west of that line, and at the beginning of the north line of the lot, there is an interruption by a narrow strip of water extending into the lot southwesterly, apparently a remnant of a space between wharves of an earlier period. And it is this space which the petitioner desires to fill in completely, and from which he desires to extend into the water of the harbor. Plats exhibited in the case show that the site for the wharf proposed is at what may be described as the inner corner of a bending or concave shore line, and that the Bethlehem Shipbuilding Corporation has its plant adjoining on the west and north. The Shipbuilding property faces downstream and out of the harbor, the petitioner's faces across the stream, and the proposed wharf would jut to some extent across the front of the Shipbuilding property. If Webster Street, leading from the south, were carried through to the water it would cover the site of the wharf. And in the case of *Baltimore v. St. Agnes Hospital*, 48 Md. 419,

it was decided that the city did not, by virtue of its control over so much of that street as had been opened, or otherwise, have any right to fill in or build a wharf there. The appellant petitioner acquired the property in 1922.

The limit to which he desires to wharf out is that of a line established in 1917 by the federal government, marking the ultimate limits to which wharves might be built into the harbor under the authority of any local laws. *Gring v. Ives,* 222 U. S. 365, 32 S. Ct. 167, 56 L. Ed. 235; *Cummings v. Chicago,* 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525; *Montgomery v. Portland,* 190 U. S. 89, 23 S. Ct. 735, 47 L. Ed. 965. And it was a line which the city adopted by ordinance in 1926 for wharves from this shore, except from the small strip in controversy. For that strip, the ordinance of 1926 retained a line established under an ordinance of 1881, reaching in and touching the shore at the site. The petitioner's wider shore line, to the east, coincides at present with the line of a still older ordinance, one of 1853.

Standing in the way of the petitioner in his suit, therefore, and in the way of compliance by the respondent officials, are the two ordinances of 1881, No. 83, and 1926, No. 779. And the validity of the restrictions imposed by these is attacked as unconstitutional invasions of rights given the petitioner under the general authorization for constructing wharves in front of riparian property. Code, art. 54, secs. 46, 47, and 48. The respondents contend that the proposed wharf would not be in front of the petitioner's property but would extend from the north side of it; that the restrictions in the ordinances cannot be held invalid by reason of anything alleged in the petition, but, even if they might be found so, their validity cannot be litigated on a petition for the writ of mandamus, which is a writ of enforcement only, to require obedience to a clear legal duty.

What in general, or in a particular case, may constitute "front" of land from which under the Code provisions the owner may make improvements, and what, on

the other hand, would be the side lines, are questions which may be reserved for further argument in another case, for it is found unnecessary to the decision of this one. *Balto. & O. R. Co. v. Chase*, 43 Md. 23, 36; *Baltimore v. Steamboat Co.*, 104 Md. 485, 498, 65 A. 353; *LaBranch's Heirs v. Montegut*, 47 La. Ann. 674, 17 So. 247; *Meier v. St. Louis*, 180 Mo. 391, 79 S. W. 955; *Carr v. Kingsbury*, 111 Cal. App. 165, 295 P. 586.

The contention that such a dispute cannot be litigated on a petition for the writ of mandamus the court finds not sustained. The limitation of purpose on the writ does not exclude consideration of all or any disputed questions of law. If it did there would seldom be any usefulness in the writ, for official opposition to a citizen's claim would seldom be the result of official obstinacy in the face of an unquestioned requirement of the law. Disputes similar to that in the present case have been adjudicated on petitions for the writ in this state. *Goldman v. Crowther*, 147 Md. 282, 128 A. 50; *Baltimore v. State*, 15 Md. 376; *Bostock v. Sams*, 95 Md. 400, 52 A. 665; *Frederick County v. Fout*, 110 Md. 165, 72 A. 765; *Upshur v. Baltimore*, 94 Md. 743, 51 A. 953. And the rule can only mean that there must be an ascertainably clear legal right and duty.

A right to build a wharf into deep water of such a navigable river as the Patapsco can be derived only from a grant or permission of the State, or of the municipality to which the power has been delegated by the State for local harbor regulation, subject to any limitation imposed by the United States government in protecting navigation. "Rivers or streams within the ebb and flow of tide, to high water mark, belong to the public, and in that sense are navigable waters; all the land below high water mark being as much a part of the *jus publicum* as the stream itself. The owners of adjacent ground have no exclusive right to such lands, nor could any exclusive right to their use be acquired, otherwise than by express grant from the State." *Day v. Day*, 22 Md. 530, 537;

*Browne v. Kennedy,* 5 H. & J. 195; *Linthicum v. Shipley,* 140 Md. 96, 98, 116 A. 871; *Shively v. Bowlby,* 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331; *Cummings v. Chicago,* 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525; *Gring v. Ives,* 222 U. S. 365, 32 S. Ct. 167, 56 L. Ed. 235. The first Maryland statute, from which rights in wharves are regularly deduced, the Act of 1745, ch. 9, sec. 10, provided merely that "all improvements, of what kind soever, either wharfs, houses or other buildings, that have or shall be made out of the water, or where it usually flows, shall (as an encouragement to such improvers), be deemed the right, title and inheritance of such improvers, their heirs and assigns forever," a provision which enables riparian owners to acquire title beyond the shore line by building there, and only by building there. *Giraud's Lessee v. Hughes,* 1 G. & J. 249, 265; *Casey's Lessee v. Inloes,* 1 Gill 430, 498; *Linthicum v. Coan,* 64 Md. 439, 453, 2 A. 826; *Horner v. Pleasants,* 66 Md. 475, 477, 7 A. 691; *Classen v. Chesapeake Co.,* 81 Md. 258, 267, 31 A. 808; *Brady v. Baltimore,* 130 Md. 506, 510, 101 A. 142. An Act of 1783, ch. 24, providing for the appointment of port wardens "to preserve the navigation of the bason and harbor of Baltimore-town," qualified the right to build wharves by prohibiting their construction without the port wardens' permission. *Wilson's Lessee v. Inloes,* 11 G. & J. 351, 360. And ever since, the consent of the municipal agencies has been required. As the harbor grew the consent was given by the establishment of limiting lines, under special municipal ordinances. And since 1860, the City Charter has empowered the Mayor and City Council to establish such pierhead lines. Code Pub. Loc. Laws (1930), art. 4, sec. 6 (8). In 1853, 1881, and 1926, these lines were marked out about the property now owned by the petitioner. And, as stated, his present wide front along the southwest shore line coincides with the pierhead line of 1853; but except for the narrow portion in question, restricted to the line of 1881, the line of 1917 now applies.

None of the lines marked out in the harbor, then,

authorize the extension which the petitioner proposes to build from that narrow strip. Consent for it has never been given, and his demand is that consent be enforced by the court, the existing ordinances to the contrary notwithstanding. Citing in support some expressions in opinions of this court, he contends, and this is the chief contention in the case, that as riparian owner he has an absolute, vested right to wharf out, protected under the Constitutions of the United States and of Maryland. "As owners of a lot in the City of Baltimore, fronting on the Patapsco River, the appellees had the right under the provisions of the Act of 1745, ch. 9, sec. 10, to extend or improve out said lot to the limit prescribed by the city authorities, and according to the well settled law of this State, they could not be deprived of this right without their consent." *Baltimore v. St. Agnes Hospital*, 48 Md. 419, 421; *Balto. & O. R. Co. v. Chase*, 43 Md. 23, 36; *McMurray v. Baltimore*, 54 Md. 103, 110. But the petitioner's improvement at the spot is already out "to the limit prescribed by the city authorities." If he contends for a right acquired from his predecessors in title, antedating establishment of the restricting pierhead line of 1881, to wharf out beyond that line, there appears to have been no consent of the authorities, no previous pierhead line, on which to found that right. And if there had been, it was in the power of the authorities to make a change in the line that would not interfere with a title acquired under the Act of 1745 by construction of improvements. "It was a privilege subject to revocation at any time before it was acted upon, and the ordinance of 1881, which repealed all ordinances inconsistent therewith, was a revocation of this privilege." *Classen v. Chesapeake Co.*, 81 Md. 258, 267, 31 A. 808, 809; *Marchant v. Baltimore*, 146 Md. 513, 528, 126 A. 884; *Giraud's Lessee v. Hughes; Casey's Lessee v. Inloes; Linthicum v. Coan; Horner v. Pleasants; Brady v. Baltimore, supra;* and *Gould, Waters*, 3rd Ed., sec. 138; 1 *Farnham, Waters*, 511. And neither the petitioner nor his predecessors in

title acquired any irrevocable right by actual building into the water.

The Act of 1862, ch. 129, secs. 38 and 39, now sections 47 and 48 of article 54 of the Code, cited as having extended the rights of riparian owners by giving them "the exclusive right of making improvements into the waters in front of" their land, excluded others, but did not otherwise enlarge the rights of the riparian owners themselves. They still have only the exclusive right to build out to the extent of permission given for wharves at the site, and the petitioner has not been denied that right. *Hess v. Muir*, 65 Md. 586, 596, 5 A. 540, 6 A. 673. Nor does the rule that adjoining owners on a concave shore must share available space for wharfing (*Baltimore v. Steamboat Co.*, 104 Md. 485, 498, 65 A. 353), aid the petition, because it is a rule only for wharfing out in permitted space. The consent of the State through its municipal agency is necessary to any wharfing out.

The petitioner contends further, however, that in the establishment and retention of the line of 1881, contiguous with his shore line at this site, he has been denied equal treatment with the adjacent owner, the Shipbuilding Corporation immediately next to him, and in front of whose property the federal government line of 1917 has been taken as the municipal pierhead line. And this, it is contended, renders retention of the 1881 line a denial of constitutional rights of the petitioner. Const. U. S. Fourteenth Amendment, sec. 1; Declaration of Rights of Md., art. 23. The ordinance of 1926 seems clearly enough a provision for the property occupied by the Shipbuilding Corporation. It was expressly conditioned upon the acquisition by that corporation of properties on its southern side, next the petitioner. It appears from the exhibits in the case that the retained line of 1881 was adopted before the Shipbuilding Corporation acquired the adjacent properties, and it would seem therefore to have been a provision for the properties rather than for the particular owner. No new advantage would accrue to that owner from continuing the disallowance of a wharf from

the bend in the shore. The mere fact of an addition to the privileges allowed to the one adjacent owner, while leaving a limitation on those of the other owner, would not of itself support an inference of unconstitutional inequality of treatment under the laws, for another possible, if not probable, explanation would remain in the care of the municipal authorities for the primary interest of navigation. It is alleged that the proposed wharf would not be constructed so as to interfere with navigation in the harbor, but the judgment of the authorities is the determining factor on that; the determination would not be for a court upon allegation and proof before it. It is not alleged that the continuation of the restriction on wharfing out from the bend was due to any motive in the authorities other than that of proper performance of their duties. It is alleged that wharves already built by neighboring owners to the southeast, and an agreement made with the city in settlement of a bulkhead line, present the practical obstacles to extending a wharf from the petitioner's wide front on that side, but the plats filed fail to show any insurmountable difficulty. And whatever the practical problem, it is not to be solved by the court's ordering a permit for the wharf now prohibited, and with it the incurring of any difficulties, to the public or to other private owners, which may have been judged to require keeping the water at the site clear.

Two considerations of first importance need to be stated. The determination of the questions presented by this petition, those of the requirements of navigation in that part of the harbor, and possibly throughout a larger part, and the fair distribution of space into which riparian owners may be permitted to project wharves, is preeminently work for special officials made familiar with the demands of all navigation and all wharfing there, not for the processes of a court of law. And upon the basis of study by such officials, and their recommendations, then the problems are, under the system prevailing with respect to this harbor, problems for legislation. The full legislative power of the State, delegated as it is, has been

given expression in the ordinance fixing the restriction of which the petition complains, and those ordinances could not be amended by the judicial power, however a court might be persuaded that amendment should be made. Cases of misuse of power, or unconstitutional exclusion of single owners from privileges generally accorded, may possibly arise, and be found remediable by judicial action; but the present petition does not, in the opinion of the court, present such a case.

*Order affirmed, with costs.*