CAUSEY ET UX. *v.* GRAY, ET AL.

[No. 246, September Term, 1967.]

*Decided July 1, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Nicholas J. Fotos* for appellants.

*Noah A. Hillman,* with whom was *Morris Turk* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal seeks a review of three orders of the Circuit Court for Ann Arundel County: (1) overruling a motion of the appellants raising a perliminary objection of want of jurisdiction in equity (Sachse, J.), (2) overruling a demurrer of the appellants to the bill of complaint filed by the appellees (Childs, J.), and (3) overruling a motion by the appellants for a rehearing and suspension of the final decree filed in the suit (Childs, J.).

The bill of complaint, filed by Dorothy Gray and Alice V. Peters, appellees in this Court and owners of Lot 59, against Eugene W. Causey and Joyce Causey, his wife, appellants, owners of Lot 58, Genevieve K. von Ascheberg and River Club Estates, Inc. (defendants below but not appellants here) alleged that the plaintiffs owned Lot 59 with a frontage of 127.84 feet in a development called River Club Estates on Rhodes River, having acquired it by a duly recorded deed dated March 16, 1964, from Paul Johannes, a certified copy of the deed being filed as an exhibit. It was further alleged that Mrs. von Ascheberg, a widow, had originally owned the tract of which Lot 59 was a part and had in 1950 conveyed the tract to River Club Estates. Mrs. von Ascheberg had caused the tract to be laid out into lots and roads and the original plat was duly recorded. Paul Johannes, the predecessor in title of the plaintiffs, had acquired Lot 59 from River Club Estates on January 15, 1963.

The defendants, the Causeys, had acquired Lot 58 from River Club Estates on May 15, 1963. The dwelling on Lot 58 was constructed by Johannes and was occupied by the Causeys in September, 1963. Lot 58 adjoins the plaintiffs' Lot 59 on the south.

Prior to the conveyance of Lot 59 to the plaintiffs by Johannes, the Causeys and Johannes are alleged to have entered into an oral arrangement whereby it was agreed that they would dredge in front of their respective properties and fill in a portion of the frontage of those properties. They also agreed that a drain pipe was to be located on Lot 59 near the division line of Lot 58 to extend through the fill area. Johannes and the Causeys agreed to a division of costs between them and each paid the costs in accordance with the agreement.

The dredging and the land fill were completed and the Causeys built a wooden retaining wall with a pier extending from the wall, as shown on a plat filed as plaintiffs' Exhibit 7. It was further alleged that the plaintiffs were informed that Johannes and the Causeys agreed upon a division line through the newly created land between Lots 58 and 59 as a S. 16° 00' 40" W line for a distance of 44.09 feet from the end of the division line between the two lots to a pipe set, but notwithstanding this agreement in regard to the division line, the Causeys now claim that the division line is an extension of the fixed division line between Lots 58 and 59 (S. 47° 59' 40" W) for a distance of 45.40 feet to a pipe found. It was alleged that the extension of the boundary line as claimed by the Causeys does and will wrongfully deprive the plaintiffs of the full use of their waterfront lot and their natural riparian rights incident to their ownership of their lot. The claim of the Causeys is also alleged to be in breach of their agreement with Johannes in regard to the division line.

It was further alleged that the plaintiffs had sought to settle the dispute in regard to the division line on an equitable basis by offering to create a new line with a bearing of S. 34° 31' 55" W.

It was also alleged that Mrs. von Ascheberg had wrongfully claimed the fill area and the area marked "Marsh" on Exhibit 7 as belonging to her and had either individually or through River Club Estates attempted to take charge of the area, convey it by deeds and place restrictions on it, notwithstanding the plaintiffs' claim to riparian rights.

It was finally alleged that in order to prevent a multiplicity of actions, the Court should assume jurisdiction for the pur-

pose of settling the rights of the parties with respect to the location of boundary lines and riparian rights.

The plaintiffs prayed for a declaratory decree:

(a) fixing a proper division line through the fill area;

(b) settling the riparian rights of the plaintiffs in so far as challenged by Mrs. von Ascheberg and River Club Estates; and

(c) granting other and further relief.

All of the defendants raised a preliminary objection pursuant to Maryland Rule 323 a (1) for lack of jurisdiction on the ground that the jurisdiction of the cause of action was exclusively at law and not in equity in that disputed boundary lines and questions of title to land in possession of the alleged wrongful possessor were involved. The Circuit Court (Sachse, J.) overruled the motion raising the preliminary objection on July 11, 1966.

The defendants then filed a combined demurrer and answer to the whole bill of complaint. The demurrer set forth the following grounds:

1. The Statute of Frauds is a complete defense to the alleged oral agreement or agreements.

2. The bill of complaint shows on its face that the plaintiffs are not riparian owners.

3. There is no allegation that the line allegedly agreed upon was uncertain or in dispute.

4. The bill of complaint shows on its face that the Causeys were in possession of the land claimed by the plaintiffs. The answer admitted certain allegations, denied others, and asserted several defenses.

The Chancellor (Childs, J.) took testimony and concluded that the alleged oral agreement had not been established by the evidence. He concluded that the equity court had jurisdiction, that riparian rights were involved and that the trial court should proceed to apportion the land fill in an equitable manner, in accordance with the established rules, and declare the proper division line for the riparian rights of the owners of Lots 58 and 59. The Chancellor set forth his findings and conclusions in a well-considered written opinion, overruled the demurrer and passed the final decree of May 16, 1967, on the

merits in which he declared that Lots 58 and 59 shown on the Amended Plat of River Club Estates border on the waters of Rhodes River in Anne Arundel County and have full riparian rights, established the division line between those two lots over any land fill, decreed that the owners of Lot 59 (the appellees) pay the owners of Lot 58 (the Causeys) $42.30 for certain improvements and divided the costs equally between the parties.

In order to understand more fully the factual situation, the contentions of the respective parties and the decree of the Chancellor, a plat has been prepared and the reporter is directed to print the plat as part of this opinion.[1] (See p. 394 *infra.*)

The Chancellor in applying the rule of apportionment stated in *Baltimore v. Baltimore & Philadelphia Steamboat Co.*, 104 Md. 485, 65 A. 353 (1906), and *Mutual Chemical Co. v. Baltimore*, 33 F. Supp. 881, *infra* properly determined the division line as follows:

> "Using the plat of River Club Estates, it will be noted that the two lots face upon a shallow cove running from lot 58 through lot 59 inclusive. Three lines which subtend this cove, disregarding its minor deviations, would consist of the following: (a) a line connecting the shore line termini of lot 59; (b) a line which extends the 108.38 foot line of lot 58 southerly; (c) a line which extends the 75.71 foot line of lot 56 northerly to intersect the extension of (b). See attached diagram. The resulting lines are nearly of equal length. Next, the center of a circle was located which circle would pass through the center points of the above three lines. The center of such a circle was scaled and determined to lie in the river approximately 190 feet from the western conterminus of the dividing line between lots 58 and 59 on a bearing therefrom South 39 degrees West. Insofar as the lots on this cove are concerned, lines running from their termini at the shore line to the center of the circle so de-

---

1. The S. 34° 31′ 55″ W. line which the plaintiffs alleged was offered as a basis for a possible settlement is not shown on the plat, as the offer of settlement was never accepted.

scribed would proportionately divide land-fill placed between the original property lines and the water. The Court accordingly will decree this line to be the true division line across the filled area. This will leave undisturbed the defendants' dock, and encompass only some eight and one-half feet of the bulkhead."

After the filing of the decree, the Causeys on June 14, 1967, filed a petition for rehearing and suspension of the operation of the decree reciting that counsel for the defendants had suggested in argument that there might be an ordinance of Anne Arundel County applicable to the fixing of a boundary and that thereafter Section 35-28 of the Anne Arundel County Code was found and promptly disclosed to the Chancellor in chambers, but that the court in its opinion did not make it clear that this ordinance was considered in reaching its decision and further that the plaintiffs had not met the burden of producing sufficient evidence upon which the court could equitably apportion the riparian tracts. It was also alleged that the acquiescence by Johannes, as predecessor in title to the plaintiffs, in the divisional line created by the extension of the boundary line between the two lots, prevented a change in the division line by application of the doctrine of estoppel. It was prayed that there be a hearing on the petition, that the decree be stayed and reconsidered and, in the alternative, that the location of the division line be reconsidered. The Chancellor on June 14, 1967, without further argument or a hearing filed a written memorandum stating why, in his opinion, the provisions of the Ordinance were not applicable and that there had been a proper determination of the division line on the evidence and authorities. The petition for a rehearing was denied the same day. A timely appeal was taken by the Causeys from both the decree of May 16, 1967, and the order of June 14, 1967. An appeal was also taken from the order of July 11, 1966, overruling the motion raising a preliminary objection.

On July 16, 1967, the Causeys filed a petition for the transmission of the record on appeal without the transcript on the ground that the transcript was not needed in that the merits of the final decree would not be challenged in this Court but only the actions of the Chancellor in overruling the motion raising

a preliminary objection, in overruling the demurrer and in the denial of the petition for a rehearing. The Chancellor filed an order on July 18, 1967, directing that the record be transmitted to this Court without a transcript of the testimony on condition, as set forth in the petition, that there would be no challenge to the merits raised in this Court.

The Causeys, as appellants, raised before us three questions already mentioned:

1. Did the Chancellor err in denying the motion of the appellants raising the preliminary objection that the equity court had no jurisdiction over the subject matter?

2. Did the Chancellor err in overruling the demurrer to the bill of complaint?

3. Did the Chancellor abuse his discretion in denying the relief prayed for in the petition for rehearing?

We have concluded that these questions should be answered in the negative and that we should affirm the orders of the lower court.

1.

The Causeys earnestly argue that the equity court will not determine a question of title to land if the defendant is in possession of the disputed land because the remedy at law by way of an action of ejectment or of trespass *quare clausum fregit* is a full, complete and adequate remedy which eliminates the necessity for intervention by the chancery court. It is further contended that the present case is primarily a boundary dispute involving the determination of a question of title and hence there is no equitable jurisdiction. As Judge Childs aptly stated in his opinion in the lower court: "This argument is an oversimplification of the problem."

It is correct, as the Causeys argue, that ordinarily the equity courts will not decide matters of title when the defendant is in possession of the land involved in the dispute. See *Barnes v. Webster,* 220 Md. 473, 475, 154 A. 2d 918, 920 (1959), and cases cited in the opinion in that case.

This general rule, however, is not applicable when there is a dispute in regard to new land, either created by accretion or man-made, added to fixed land on navigable waters. When the riparian rights of the owners of the fixed land bordering navi-

gable waters is involved, equitable apportionment cannot be obtained in a court of law. For this reason, the remedy at law is not adequate and the equity courts in this State have entertained equitable jurisdiction to afford this equitable relief. See *Classen v. Chesapeake Co.*, 81 Md. 258, 31 A. 808 (1895).

It should be kept in mind that the "title" of private owners to "riparian land" is created quite differently from the title to fixed land. It is well established that the title to land under navigable water is in the State of Maryland, subject to the paramount right of the United States to protect navigation in the navigable waters. *Smith v. Maryland*, 18 How. (59 U. S.) 71, 15 L. Ed. 269 (1855) ; *Day v. Day*, 22 Md. 530, 537 (1865) ; *Smoot Sand & Gravel Co. v. Columbia Granite & Dredging Corp.*, 146 Md. 384, 388, 126 A. 91 (1924). The owner of the fast land, however, has a common law right to land formed by accretion adjacent to the fast land and has the right of access to the navigable part of the river in front of his fast land, with the right to make a landing, wharf or pier in front of his fast land, subject, however, to general rules and regulations imposed by the public authorities necessary to protect the rights of the public. When the statutory law grants the right to a riparian owner to extend his lot or to improve out to the limits prescribed by the public authorities, the riparian owner receives a "franchise—a vested right, peculiar in its nature but a *quasi* property of which the lot owner cannot be lawfully deprived without his consent." *B & O R. R. Co. v. Chase*, 43 Md. 23, 36 (1875). When the lot owner makes improvements in front of his lot, complete title then vests in him in the improvements provided it is in front of his lot and does not appropriate the riparian rights of his neighbors. *B & O R. R. Co. v. Chase*, 43 Md. at 36-37.

The first statute in Maryland in regard to the right of riparian owners of land contiguous to navigable waters in improvements in waters in front of their land was passed by the General Assembly in 1745, when Maryland was still a Proprietary Colony. See Chapter 9 of the Laws of 1745. By this Act, it was provided that "all improvements of what kind soever, either wharfs, houses or other buildings, that have or shall be made out of the water, or where it usually flows (as an encourage-

ment for such improvers) be forever deemed the right, title and inheritance of such improvers, their heirs and assigns forever." See *Dugan v. Mayor & City Council of Baltimore,* 5 G. & J. 357, 367-68 (1833) ; *Wilson v. Inloes,* 11 G. & J. 351, 358-59 (1840) ; *Casey v. Inloes,* 1 Gill 430, 501-02 (1844) ; *B & O R. R. Co. v. Chase, supra; Baltimore v. St. Agnes' Hospital,* 48 Md. 419 (1878).

There were important statutory changes in 1862, when the General Assembly passed Chapter 129 of the Laws of 1862, portions of which now appear as Code (1957) Article 54, Sections 45, 46 and 48.

These sections provide as follows :

"§ 45. Accretion to land on navigable river.

The proprietor of land bounding on any of the navigable waters of this State shall be entitled to all accretions to said land by the recession of said water, whether heretofore or hereafter formed or made by natural causes or otherwise, in like manner and to like extent as such right may or can be claimed by the proprietor of land bounding on water not navigable."

"§ 46. Right to make improvements in front of land on navigable river.

The proprietor of land bounding on any of the navigable waters of this State shall be entitled to the exclusive right of making improvements into the waters in front of his said land ; such improvements and other accretions as above provided for shall pass to the successive owners of the land to which they are attached, as incident to their respective estates. But no such improvements shall be so made as to interfere with the navigation of the stream of water into which the said improvement is made."

"§ 48. Patent not to affect riparian rights, nor issue for land covered by navigable waters.

No patent hereafter issued out of the Land Office shall impair or affect the rights of riparian proprietors, as explained and declared in §§ 45 and 46; and no patent shall hereafter issue for land covered by navigable waters."

An excellent and comprehensive history of the Maryland statutory law and of the cases construing those statutes appears in Judge Coleman's opinion in *Mutual Chemical Co. of America v. Mayor and City Council of Baltimore*, 33 F. Supp. 881 (D. Md. 1940) and in a more abbreviated form in *Mayor & City Council of Baltimore v. Crown Cork & Seal Co.*, 122 F. 2d 385 (4th Cir. 1940) affirming in part and reversing in part the decree in the *Mutual Chemical Co.* case. It would unduly prolong this opinion to give that most interesting history here. It is sufficient for the present case to observe that the *Mutual Chemical Co.* case was filed in the Federal Court on the basis of diversity of citizenship and Maryland law was applied. The District Court's decree in that case was *reversed in part* so that the trial court could give additional *equitable relief* to other riparian owners by way of equitable determination of their division lines from the terminus of their lot lines to the pier line established in the Patapsco River by the United States. There was no suggestion in the case in the District Court or before the Fourth Circuit on appeal that equitable jurisdiction did not exist because of an adequate remedy at law, although the City of Baltimore did challenge the jurisdiction of the District Court on other grounds.

In our opinion equitable jurisdiction is established when the apportionment of riparian rights or man-made or filled land in navigable waters is the relief prayed. The Supreme Court of Appeals of Virginia is of the same opinion. See *Cordovana v. Vipond*, 198 Va. 353, 94 S. E. 2d 295, 65 A.L.R.2d 138 (1956).

In *Cordovana*, the suit was between coterminous owners of lots on the Lafayette River, a navigable river in the Commonwealth of Virginia. As in the case at bar, the exhibits showed that the course of the river was irregular. The Chancellor decreed a division line by extending the course of a divisional line of one of the lots. In reversing the decree, Mr. Justice Whittle said, at 198 Va. 357-8, for the Supreme Court of Appeals of Virginia:

"A riparian owner is entitled, in conformity with these (riparian) rights to have the extent of his en-

joyment upon the line of navigability of the water-course determined and marked, and his boundaries defined. *The right is based upon principles of equity and a court of chancery is the proper tribunal to make the apportionment and to determine the boundaries between coterminous owners.*

"* * * We said in *Grover v. Foster*, 94 Va. 650, 651, 652, 27 S. E. 493, that * * * : 'In making the apportionment the prime object, upon plain principles of justice, should be to give to each proprietor of the shore, and as directly in his front as practicable, *a parcel of land under the water of a width at its outer end upon the line of navigability proportioned to that which it has at the inner or shore end. Wonson v. Wonson*, 14 Allen (Mass.) 71; and Gould on Waters §§ 162, 163.' " (Emphasis supplied.)

The law generally requires the equitable division of accretions or man-made fill between coterminous owners. See *Farnham, Waters and Water Rights* (1904) page 2481; *Gould, Law of Waters* (1900), § 162; Annotation: "Apportionment and division of area of river as between riparian tracts fronting on the same bank, in absence .of agreement or specification." 65 A.L.R.2d 143, 147, 183-188, 193-194; 56 Am. Jur. *Waters,* § 274, pages 727-730, § 463, pages 876-877; 65 C.J.S. *Navigable Waters* § 111 pages 341-342. The Chancellor properly denied the motion raising the preliminary objection that the equity court had no jurisdiction over the subject matter.

2.

The Chancellor also properly overruled the demurrer to the bill of complaint. Our holding that there was jurisdiction in equity to declare the proper division line between Lots 58 and 59 with regard to the land fill indicates that declaratory relief was proper and, in our opinion, the allegations of the bill of complaint and the attached exhibits indicated that the owners of the two lots were riparian owners who were entitled to a declaration in regard to the proper division line. The Causeys also challenged the sufficiency of the allegations of paragraphs 8, 9, 11 and 12 of the bill of complaint setting out the alleged

oral agreement in regard to the division line and other matters, principally on the ground that the Statute of Frauds was a complete defense. Assuming, arguendo, that this construction were correct, it would not justify the sustaining of the demurrer to the *whole bill of complaint,* as it is well established that a demurrer to an entire bill of complaint must fail if, eliminating any portion of it that may be defective, enough remains to present a sufficient ground for equitable relief. *Smith v. Smith,* 216 Md. 141, 145, 140 A. 2d 58, 60 (1958) ; see also *Jackson v. Cupples,* 239 Md. 637, 641, 212 A. 2d 273, 275 (1965).

Even in regard to the paragraphs of the bill of complaint concerning the alleged oral agreement, the allegations present a case for declaratory relief as a justiciable issue is raised. It is immaterial to the granting of declaratory relief that the court might possibly *rule against* the plaintiff and declare that the oral contract was unenforceable because of the provisions of the Statute of Frauds. As Judge Prescott, for the Court, stated in *Shapiro v. Board of County Comm'rs for Prince George's County,* 219 Md 298, 302-03, 149 A. 2d 396, 398-99 (1959) :

> "It should be borne in mind that a demurrer is rarely appropriate in a declaratory judgment action. Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree. 1 Anderson, *Declaratory Judgments,* Section 318."

It may be added that, in any event, the Causeys suffered no

injury from this portion of the Chancellor's ruling, as the Chancellor found from the evidence that the alleged oral agreement had not been established.

3.

Finally, we are of the opinion that the Chancellor did not abuse his discretion in denying the relief prayed for in the petition for a rehearing timely filed pursuant to Maryland Rule 690.

The principal ground for the rehearing was whether a provision of the Zoning Ordinance of Anne Arundel County, Section 35-28 of the 1957 Anne Arundel County Code, was applicable and preempted the Chancellor's power to establish the riparian division line in this case. This section provides:

> "Sec. 35-28. Piers, wharves and mooring piles.
>
> Piers, wharves, mooring piles and all structures proposed to be located below the mean low water line shall be placed within lines extending at right angles to the main course of the stream or river from the land on which they abut, such right angles to start at the intersection of the side property lines with the mean low water line. Where in the opinion of the zoning official this regulation would cause unusual hardship, he may permit all such structures to be located within the extensions of the last course of the side property lines into the water; or, if this is impracticable, he shall require all such structures to be placed so as to cause as little interference from width and length to neighboring properties as is reasonably practicable, subject to appeal to the board of appeals. (7-1-52 as amended to 11-23-54, § 1.)."

These contentions go to the merits of the case, which we will not consider on the denial of a motion for a reargument, or in the absence of the transcript of the testimony. The only issue before us is whether the Chancellor abused his discretion in denying the motion. *Holcomb v. Fender*, 203 Md. 480, 101 A. 2d 814 (1954); see *Leitch v. Anne Arundel County*, 248 Md. 611, 237 A. 2d 748 (1968).

The Causeys contend that the Chancellor abused his discretion in overruling the petition for a rehearing without having had a hearing on the petition as requested by the Causeys in the petition. As the principal ground for the petition had already been raised at the argument on the merits (even though the provisions of the ordinance were later submitted to the Chancellor in chambers, and found not to be applicable) and the other points were sufficiently stated in the petition itself, we are of the opinion that there was no abuse of discretion in the prompt ruling on the petition for rehearing by the Chancellor without further argument. See *Holcomb v. Fender,* 203 Md. 480, 487, 101 A. 2d 814, 817 (1954).

*Orders affirmed, the costs to be paid*
*by the appellants.*

PLAT Showing Disputed AREA
AND
The New Division Line
ESTABLISHED By The DeCREE
of MAY 16, 1967

LoT 59

LoT 58

S. 47° 04' W.

N. 20° 0 W.

S. 45° 07' W.

S. 45° 40" W.

N. 36° 56' 50" W

Pipe found 108.38'

S. 16° 00' 40" W.

Original Shore Line

N. 73° 59' 20" W.
93.58'

AREA

37'±

RECORD PLAT

Z

45' 40"

Pipe found

Pipe Set

EXISTING WOOD RETAINING WALL

6'

20'

EXISTING PIER

FILL

34.76'

Disputed AREA ▨

15.7'

EXISTING Shore Line

Existing Shore Line

Pipe Set

MARSH

RHODE

R IVE

1st STREAM

SCALE
1" = 40'