707 A.2d 829

**HOLIDAY POINT MARINA PARTNERS**

v.

**ANNE ARUNDEL COUNTY, Maryland et al.**

**No. 4, Sept. Term, 1996.**

Court of Appeals of Maryland.

April 3, 1998.

Charles R. Schaller (Marian C. Hwang, Thomas E. Lynch, III, Miles & Stockbridge, on brief), Baltimore, for petitioner.

Patricia A. Logan, Senior Asst. County Atty. (Phillip F. Scheibe, County Atty., Anne Arundel County Office of Law; Thomas J. Wohlgemuth, argued, on brief), Annapolis, for respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The issue in this case concerns Article 28, § 5–108(e), of the Anne Arundel County Code. Section 5–108 is a zoning ordinance applicable to the location of marina facilities along the shoreline of rivers, the Chesapeake Bay, and other waters of Anne Arundel County. Subsection (e) of the ordinance imposes minimum distance restrictions between the situs of marina facilities and shellfish beds. The issue presented by the petitioner is whether an ordinance limiting the number of boat

---

* Murphy, C.J., and Karwacki, J., now retired, participated in the hearing of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and the adoption of the opinion.

slips and the situs of marine facilities, for the purpose of protecting shellfish beds which lie beneath the tidal waters of the State, is within the zoning authority of Anne Arundel County. The issue presented by one of the respondents is whether the petitioner pursued the appropriate action.

## I.

The facts in this case are not in dispute, although its procedural history is somewhat unusual. The case arises from the pursuit by Holiday Point Marina Partners of the required permits to enable it to extend its existing piers to create approximately 100 additional boat slips, resulting in more than 260 boat slips in all. The marina fronts Selby Bay in Anne Arundel County, is spread over 18 acres of fast land, and is zoned MB–1 and MC–1, permitting the operation of a commercial marina. Holiday Point successfully obtained approvals and permits to construct the proposed expansion of its facilities from the United States Army Corps of Engineers, the Maryland Department of Natural Resources, the Maryland Department of the Environment, and the Maryland Board of Public Works. Holiday Point then applied to Anne Arundel County for a building permit. The expansion, however, violated § 5–108(e) of the Anne Arundel County Code unless a zoning variance was obtained.[1] The County informed Holiday Point that, prior to the issuance of a building permit, a variance was required because the proposed slips were closer than one-half mile to an oyster bed.

Holiday Point applied for and was denied a variance by the Zoning Hearing Officer. A timely appeal to the Anne Arundel County Board of Appeals was then filed. Prior to the decision

---

1. Section 5–108(e) states as follows:

 "(e) Maritime Group Districts and Marina Facilities may not be located, as measured in a straight line through the water, closer than the following distances to shellfish beds:
 (1) one-eighth of a mile for a marina with 50 or fewer slips;
 (2) one-fourth of a mile for a marine with 51 to 100 slips, inclusive; and
 (3) one half of a mile for a marina with more than 100 slips."

of the Board of Appeals, however, Holiday Point, on January 11, 1994, filed a complaint for a declaratory judgment against the County in the Circuit Court for Anne Arundel County, requesting a declaratory judgment that § 5–108(e) was invalid.

Thus, in early 1994, Holiday Point was pursuing both a declaratory judgment action in the circuit court and an administrative appeal before the Board of Appeals. In March 1994, the Selby Community Association, Inc., filed a motion to intervene in the circuit court declaratory judgment action; the motion was opposed by the County and Holiday Point. The circuit court denied the motion to intervene, and the Community Association appealed that denial to the Court of Special Appeals. While this appeal was pending, the parties to the declaratory judgment action consented to the intervention of the Community Association, and the Community Association voluntarily dismissed its appeal.

Throughout the Spring and Fall of 1994 Holiday Point also actively pursued its administrative appeal of the Hearing Officer's denial of the variance. Holiday Point argued before the Board of Appeals that the variance should be granted because the oyster bed was not viable. Holiday Point also attacked the validity of § 5–108(e), arguing before the Board of Appeals that the County did not have the power to enact such an ordinance. On January 4, 1995, the Board of Appeals affirmed the denial of the variance. The Board found that the oyster bed was viable, but the Board refused to consider Holiday Point's challenge to the validity of § 5–108(e), stating that

"[t]he Board does not believe that this is an issue that is appropriate for it to consider. This Board looks to the county code and attempts to apply the code provisions when it decides cases: if the code provisions are for some reason inapplicable, it is for a body other that this Board to make that determination."

Holiday Point immediately filed in the Circuit Court for Anne Arundel County an action for judicial review of the Board of

Appeals' decision. The judicial review action was not consolidated in any manner with the declaratory judgment action.

Meanwhile, the parties had filed cross-motions for summary judgment in the declaratory judgment case, and a hearing was held on January 11, 1995. Holiday Point argued that the County did not have the authority, under Maryland Code (1957, 1996 Repl.Vol.), Art. 25A, § 5, to enact § 5–108(e). Holiday Point maintained that (1) the authority to regulate oyster beds was not expressly delegated to the County, (2) regulation of oyster beds was outside of the traditional area of zoning concerns, (3) the County had no authority to regulate the land beneath the waters of the State, and (4) § 5–108(e) must yield to state and federal law under the doctrine of preemption.

In response, the County asserted that (1) express delegation by the State to local subdivisions to regulate oyster beds is not the proper standard to determine the validity of a local zoning ordinance, (2) environmental protection is a valid basis for the exercise of local zoning authority, (3) the County had authority to regulate the land beneath the waters of the State under the principles set forth in *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979), and (4) Holiday Point failed to identify any specific legislation or pervasive statutory scheme that preempted § 5–108(e).

Additionally, the Community Association contended that no declaratory judgment should be rendered because the administrative and judicial review remedies had not been exhausted. The Community Association noted that, at the time of the filing of the declaratory judgment complaint and the cross motions for summary judgment, the Board of Appeals had not issued its decision. At the time of the hearing on the cross motions for summary judgment, however, the Board of Appeals had decided that Holiday Point was not entitled to a variance. Nevertheless, the Community Association argued that Holiday Point should not be permitted to pursue the case on two different tracks. The Community Association asserted

that the issue should be resolved in the judicial review action and that a declaratory judgment cause of action did not lie.

On January 20, 1995, the circuit court granted the County's Motion for Summary Judgment and denied Holiday Point's Motion for Summary Judgment. The court filed a declaratory judgment declaring as follows: (1) exhaustion of the administrative and judicial review remedy was not required because Holiday Point directly attacked the authority of the County to adopt § 5–108(e); (2) the "general grant of authority" in Art. 25A, § 5, "is broad enough to encompass the exercise by the County of [this] zoning authority;" and (3) § 5–108(e) was not preempted because it neither conflicted with state and federal legislation nor was there evidence of a comprehensive legislative scheme implying an intent to preempt. The circuit court made no rulings in the pending judicial review action.

Holiday Point appealed the declaratory judgment, and the Court of Special Appeals, in November 1995, affirmed, holding that (1) the County was empowered to enact zoning laws for the purpose of protecting the environment, and (2) § 5–108(e) was not preempted by federal or state law. *Holiday Point v. Anne Arundel Cty.,* 107 Md.App. 160, 666 A.2d 1332 (1995). At the time of the Court of Special Appeals' decision Holiday Point's action for judicial review of the zoning variance denial was still pending in the Circuit Court for Anne Arundel County. The judicial review action was "withdrawn" by Holiday Point on December 11, 1995.

Holiday Point filed a petition for a writ of certiorari to review the decisions below in the declaratory judgment action, and this Court granted the petition. *Holiday Point v. Anne Arundel County,* 341 Md. 719, 672 A.2d 659 (1996). Holiday Point presents the following two issues:

"I. Whether Anne Arundel County exceeded its authority under the Maryland Express Powers Act by enacting Article 28, § 5–108(e) of the Anne Arundel county Code, which prohibits the location of marinas in state tidal wetlands in proximity to shellfish beds on pur-

ported concerns for water quality, shellfish and consumers of shellfish?

"II. Whether the general public laws and regulations of Maryland that protect water quality, shellfish and consumers of shellfish, and govern the location and construction of marinas in state wetlands preempt Article 28, § 5–108(e) of the Anne Arundel County Code?"

The Community Association presents the additional question of whether the declaratory judgment action should be dismissed because of Holiday Point's failure to exhaust the administrative and judicial review remedies. We shall first address the issue raised by the Community Association.

## II.

Anne Arundel County is a charter county and, therefore, is subject to the Express Powers Act, Code (1957, 1996 Repl. Vol., 1997 Supp.), Art. 25A. That statute, in §§ 5(U) and 5(X), provides the zoning authority for all charter counties except Montgomery and Prince George's Counties.[2] Art. 25A, § 5(U), authorizes a charter county to establish a Board of Appeals and provides that such Board of Appeals have exclusive appellate jurisdiction over, *inter alia,* a variety of adjudicatory zoning matters.[3] *See United Parcel v. People's Coun-*

---

**2.** The zoning authority for Montgomery and Prince George's Counties is set forth in the Regional District Act, Code (1957, 1997 Repl.Vol., 1997 Supp.), Art. 28, § 7–101 et seq. *See Montgomery County v. Revere Nat. Corp., Inc.,* 341 Md. 366, 383, 671 A.2d 1, 9 (1996); *Mossburg v. Montgomery County,* 329 Md. 494, 502–503, 620 A.2d 886, 890 (1993); *Chevy Chase View v. Rothman,* 323 Md. 674, 685, 594 A.2d 1131, 1136 (1991).

**3.** Art. 25A, § 5(U) states as follows:

"(U) County Board of Appeals

"To enact local laws providing (1) for the establishment of a county board of appeals whose members shall be appointed by the county council; (2) for the number, qualifications, terms, and compensation of the members; (3) for the adoption by the board of rules of practice governing its proceedings; and (4) for the decision by the board on petition by any interested person and after notice and opportunity for

*sel,* 336 Md. 569, 587–590, 650 A.2d 226, 235–237 (1994), and cases there discussed. Section 5(U) further provides for judicial review of the Board of Appeals' decisions.

Holiday Point did invoke the administrative procedures mandated by Art. 25A, § 5(U). Although the administrative and judicial review proceeding is not directly before us, it is important to point out that the Anne Arundel County Board of Appeals clearly erred in holding that it would not consider Holiday Point's challenge to the validity of § 5-108(e). This Court has consistently held over the past fifty years that the question of a zoning ordinance's validity, as applied to the property involved, is an appropriate issue for an administrative zoning agency. We have held that, if a restriction under a zoning ordinance cannot constitutionally or validly be applied, this is a proper ground for the administrative zoning agency to grant an exception or a variance. *See, e.g., Md. Reclamation Associates, Inc. v. Harford Cty.,* 342 Md. 476, 491–492, 677 A.2d 567, 575 (1996) ("under Maryland law, the Harford County Board of Appeals would be authorized and required to consider any of the constitutional and other

---

hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax: Provided, that upon any decision by a county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision. Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive."

issues raised by Maryland Reclamation to the extent that those issues would be pertinent in the particular proceeding before the Board"); *Insurance Commissioner v. Equitable,* 339 Md. 596, 617–624, 664 A.2d 862, 873–876 (1995) ("The modern cases make it clear that the constitutionality of a statute as a whole can be initially decided in the administrative proceedings"); *Arnold v. Prince George's Co.,* 270 Md. 285, 294–299, 311 A.2d 223, 227–231 (1973) (requiring a property owner, asserting that a zoning ordinance was unconstitutional as applied to his property, to exhaust his administrative remedy); *Hartman v. Prince George's Co.,* 264 Md. 320, 323–325, 286 A.2d 88, 89–90 (1972) (reviewing numerous cases holding that constitutional arguments must be made in the statutorily prescribed administrative proceedings); *Gingell v. County Commissioners,* 249 Md. 374, 376, 239 A.2d 903, 904 (1968) (rejecting the plaintiff's argument that she need not exhaust her administrative remedy on the theory that only a court may declare the statute unconstitutional); *Poe v. Baltimore City,* 241 Md. 303, 307–308, 216 A.2d 707, 709 (1966) (finding that "[i]t is particularly within the expertise of an administrative body such as the Board to marshal and sift the evidence presented in a hearing upon an application for a special exception and to make an administrative finding as to whether ... the application of the ordinance to the property involved deprives the owner of any reasonable use of it"); *Baltimore v. Seabolt,* 210 Md. 199, 207, 123 A.2d 207, 210 (1956) (zoning appeals board was authorized to grant " ' "exceptions" ... by holding the [zoning] ordinance *pro tanto* invalid' "); *Hoffman v. City of Baltimore,* 197 Md. 294, 305–306, 79 A.2d 367, 372 (1951) ("Application for an 'exception' is an appropriate way to raise" the issue of whether a zoning ordinance is invalid).

Consequently, the Board of Appeals should have ruled on Holiday Point's challenge to the validity of § 5–108(e). Furthermore, since the Board of Appeals erroneously failed to rule on this issue, Holiday Point, in its judicial review action, could have obtained a reversal of the Board of Appeals' decision because of that error.

■ Holiday Point, however, withdrew its judicial review action and sought a final ruling on the validity of § 5–108(e) in the declaratory judgment action. The Community Association insists that Holiday Point erred by pursuing the wrong action in the circuit court. We agree.

■ This Court has consistently held that, where there exists a remedy before a charter county's board of appeals under Art. 25A, § 5(U), an aggrieved party must invoke and exhaust the administrative and judicial review remedy provided by § 5(U). *Md. Reclamation v. Harford Cty., supra,* 342 Md. at 494, 677 A.2d at 576; *United Parcel v. People's Counsel, supra,* 336 Md. at 588–589, 650 A.2d at 236; *Hope v. Baltimore County,* 288 Md. 656, 657–658, 421 A.2d 576, 577 (1980); *Klein v. Colonial Pipeline Co.,* 285 Md. 76, 83, 400 A.2d 768, 772 (1979). This requirement is based on the plain language of Art. 25A, § 5(U), which states that "[t]he review proceedings provided by this subsection shall be exclusive."

Holiday Point, however, invokes an asserted exception to the requirement that the administrative and judicial review remedies under § 5(U) must be invoked and exhausted. Relying on this Court's decision in *Harbor Island Marina v. Calvert Co., supra,* 286 Md. 303, 407 A.2d 738, Holiday Point contends that, because it requested the court to declare the County's enactment of 5–108(e) invalid, it was not required to exhaust the administrative and judicial review procedures under Art. 25A, § 5(U).

In cases where an administrative agency has primary jurisdiction, we have recognized a limited "constitutional" or "validity" exception to the normal requirement that administrative and judicial review remedies be invoked and exhausted. See *Insurance Commissioner v. Equitable, supra,* 339 Md. at 620–624, 664 A.2d at 874–876, for a discussion of this narrow exception. The very few cases applying this exception, however, were not ones where the administrative and judicial review remedy was the exclusive remedy.

The principal case relied upon by Holiday Point and by the circuit court is *Harbor Island Marina v. Calvert Co., supra,*

286 Md. 303, 407 A.2d 738. We held in *Harbor Island* that, because the plaintiff had mounted a direct attack on the power of the County Commissioners of Calvert County to enact the disputed zoning ordinance, a judicial determination of the validity issue was permissible even though administrative remedies had not been exhausted. This Court stated that, because the constitutional attack was made upon the "validity of a general enactment as a whole," exhaustion was not required. 286 Md. at 308, 407 A.2d at 741.

*Harbor Island,* however, is readily distinguishable from the instant case. That case involved Calvert County, a non-charter county which is *not* subject to the Express Powers Act, Code (1957, 1996 Repl.Vol., 1997 Supp.), Art. 25A. Rather, the applicable administrative and judicial review procedures for zoning matters in non-charter counties are set forth in Code (1957, 1995 Repl.Vol., 1997 Supp.), Art. 66B, §§ 4.04—4.08. The relevant sections of Art. 66B do *not* contain any language that makes the administrative and judicial review remedy exclusive.

We are aware of only one other zoning or land-use case where this Court applied the so-called "constitutional" or "validity" exception. In *Richmark Realty v. Whittlif,* 226 Md. 273, 173 A.2d 196 (1961), residents of Baltimore City filed a suit in equity requesting that a Baltimore City zoning ordinance be declared illegal and void and that a building permit issued pursuant to the ordinance be revoked. The defendants raised the issue of exhaustion because the local residents had not availed themselves of the available administrative remedy. Again, Baltimore City is not subject to Art. 25A and the exclusivity language of § 5(U). Instead, the administrative and judicial review zoning procedures applicable to Baltimore City are contained in Code (1957, 1995 Repl.Vol., 1997 Supp.), Art. 66B, §§ 2.06–2.09, which do not contain any language of exclusivity.

The General Assembly in Art. 25A, § 5(U), has expressly stated that the administrative and judicial review remedy applicable to the present case is "exclusive." The

effect of such language is to abrogate any alternative legal or equitable remedies that might otherwise have existed. As explained in numerous cases, where the administrative and judicial review procedures are exclusive, neither a declaratory judgment action nor a common law or equitable action will lie. *See Zappone v. Liberty Life Insurance Co.*, 349 Md. 45, 706 A.2d 1060 (1998); *Bowman v. Goad*, 348 Md. 199, 703 A.2d 144 (1997); *Insurance Commissioner v. Equitable, supra*, 339 Md. at 623, 664 A.2d at 876; *Moats v. City of Hagerstown*, 324 Md. 519, 529, 597 A.2d 972, 977 (1991); *Muhl v. Magan*, 313 Md. 462, 480–481, 545 A.2d 1321, 1330 (1988); *Nordheimer v. Montgomery County*, 307 Md. 85, 96–98, 512 A.2d 379, 384–386 (1986); *Potomac Elec. Power v. P.G. County*, 298 Md. 185, 189–191, 468 A.2d 325, 327 (1983); *Apostol v. Anne Arundel County*, 288 Md. 667, 672–673, 421 A.2d 582, 585–586 (1980); *White v. Prince George's Co.*, 282 Md. 641, 649–653, 387 A.2d 260, 265–267 (1978). This is true even though the validity of a statute on its face is being challenged. The so-called "constitutional" or "validity" exception to the requirement that a primary administrative remedy be first invoked and exhausted ordinarily has no application when the administrative and judicial review remedy is exclusive. *Insurance Commissioner v. Equitable, supra*, 339 Md. at 623, 664 A.2d at 876 ("where the only avenue for relief is the statutorily prescribed administrative and judicial review proceedings, a constitutional challenge to a statute, whether on its face or as applied, must be ... litigated in [that] proceeding"); *Potomac Elec. Power v. P.G. County, supra*, 298 Md. at 189–191, 468 A.2d at 327–328; *Apostol v. Anne Arundel County, supra*, 288 Md. at 674–675, 421 A.2d at 586 ("*Harbor Island Marina v. Calvert Co.*, [*supra*, and similar] cases were not concerned with a situation where the *only* relief available is the special administrative and judicial review remedy provided by statute").[4]

---

4. Despite some contrary language in a few earlier Maryland cases, this Court has consistently, for the last half-century, taken the position that the Legislature may properly require that an issue of validity or constitutionality be raised through the administrative process, and, as long as judicial review is available, there is no violation of the separation of

Consequently, the Community Association correctly argued, both before the circuit court and on appeal, that no declaratory judgment action could be maintained in this case.

### III.

Alternatively, even if we were to assume, *arguendo,* that the Board of Appeals had ruled on the question of § 5–108(e)'s validity and that the circuit court's judgment could be viewed as an affirmance of the administrative decision, Holiday Point would still not be entitled to relief. The circuit court correctly held that the County's zoning power extended to the regulation of the situs of piers and the number of boat slips, and that the local ordinance was not preempted by state law.

### A.

■ There is no dispute that the County has the power, derived from Art. 25A, § 5(X), to enact zoning and planning laws. *See Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Hope v. Baltimore County, supra,* 288 Md. at 665, 421 A.2d at 581; *Anne Arundel County v. Ward,* 186 Md. 330, 337, 46 A.2d 684, 687 (1946). Furthermore, a county's zoning authority ordinarily encompasses piers and wharves that are attached to the land. *People's Counsel v. Maryland Marine,* 316 Md. 491, 498, 560 A.2d 32, 35 (1989); *Harbor Island Marina v. Calvert County, supra,* 286 Md. at 317–323, 407 A.2d at 746–749.

■ The question raised by Holiday Point, however, is whether Article 28, § 5–108(e), of the Anne Arundel County Code, which zones improvements attached to riparian land, is invalid because the ordinance takes into account the health of shellfish beds. The concern is that the shellfish beds in question are on land beneath tidal waters and, therefore, are

---

powers principle set forth in Article 8 of the Maryland Declaration of Rights. *See Insurance Commissioner v. Equitable,* 339 Md. 596, 617–624, 664 A.2d 862, 873–876 (1995). *See also Maryland Aggregates v. State,* 337 Md. 658, 675–679, 655 A.2d 886, 896, *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 856 (1995), and cases there cited.

generally owned by the State. *People's Counsel v. Maryland Marine, supra,* 316 Md. at 502, 560 A.2d at 37; *Potomac Sand & Gravel v. Governor,* 266 Md. 358, 364, 293 A.2d 241, 244, *cert. denied,* 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490 (1972); *Hirsch v. Md. Dep't of Nat. Resources,* 288 Md. 95, 98, 416 A.2d 10, 12 (1980); *Dep't of Nat. Resources v. Ocean City,* 274 Md. 1, 5, 332 A.2d 630, 633 (1975); *Causey v. Gray,* 250 Md. 380, 387, 243 A.2d 575, 581 (1968); *Green v. Eldridge,* 230 Md. 441, 447, 187 A.2d 674, 677 (1963); *Clark v. Todd,* 192 Md. 487, 492, 64 A.2d 547, 549 (1949); *Cahill v. Baltimore,* 173 Md. 450, 455, 196 A. 305, 308 (1938); *Adams v. Carey,* 172 Md. 173, 182, 190 A. 815, 820 (1937); *Hodson v. Nelson,* 122 Md. 330, 338, 89 A. 934, 937 (1914). *See also State v. Applegarth,* 81 Md. 293, 299, 31 A. 961, 962 (1895) ("oyster beds are the property of the State"). It is well settled that a county is not entirely free to zone State property. *People's Counsel v. Maryland Marine, supra,* 316 Md. at 499, 560 A.2d at 36; *City of Baltimore v. State,* 281 Md. 217, 222–224, 378 A.2d 1326, 1329–1330 (1977).

Two cases decided by this Court provide guidance regarding the zoning power of local governments when land under tidal waters is affected. In *Harbor Island Marina v. Calvert County, supra,* 286 Md. at 316–323, 407 A.2d at 745–749, a commercial marina filed a declaratory judgment action against Calvert County, challenging the County's power to enact ordinances for the purpose of providing orderly development of waterfront areas within the County. The marina asserted that the ordinances' regulation of tidal waters, the lands beneath the waters, and wetlands, was invalid. Judge J. Dudley Digges, writing for a unanimous Court, held that Calvert County had not exceeded its local zoning power. After reviewing numerous prior cases concerning riparian rights and governmental authority over them, the Court reaffirmed that improvements made and attached to riparian land were additions to the land and subject to a county's zoning power. The Court concluded (286 Md. at 322, 407 A.2d at 748):

"Reverting to a consideration of the present case, what we have before us is a policy decision which has existed for over two centuries—when improvements are made into the navigable waters by a riparian proprietor, the land utilized in their construction, which prior to completion belonged to the State, for all practical purposes becomes a part of his fast land. Thus, any limitation upon the county's ability to zone which arises because the land in question belongs to the State does not apply to improvements attached to riparian land."

The *Harbor Island* opinion went on to note that in the Wetlands Act, Ch. 241 of the Acts of 1970, Code (1974, 1979 Cum.Supp.), § 9–201 of the Natural Resources Article, the General Assembly provided that a riparian owner " 'may make improvements into the water in front of the land to preserve that person's access to the navigable water or protect the shore of that person against erosion' " and that such an improvement " 'is the property of the owner of the land to which it is attached.' " 286 Md. at 322, 407 A.2d at 748–749. The Court then stated (286 Md. at 323, 407 A.2d. at 749):

"Therefore, improvements erected pursuant to the grant contained in section 9–201 are extensions of the dry land to the same extent as those built under its predecessors, and are accorded the same protections and are subject to the same restrictions as developed in our prior cases. In the final analysis, we hold that Calvert County has the authority to reasonably regulate through zoning the exercise of the riparian right to wharf out because, under law dating back for more than 200 years, this right, when exercised, is nothing more than an extension of the shore land."

The scope of a local government's power to zone riparian improvements was further examined in *People's Counsel v. Maryland Marine, supra,* 316 Md. 491, 560 A.2d 32. At issue in *Maryland Marine* was the determination by the Baltimore County Zoning Commissioner, the Baltimore County Board of Appeals, and the Circuit Court for Baltimore County, that the County,. through its zoning authority, had the power to permit the construction of "a restaurant on top of piers and pilings

over the tidal waters of Frog Mortar Creek." 316 Md. at 494, 560 A.2d at 33. This Court, again relying on the language of the Wetlands Act, § 9–201, stated that a riparian owner's right to construct improvements in the adjacent tidal waters was normally limited to those improvements that provide access to the waters or protect the shore against erosion. The Court also indicated that a County's zoning authority with regard to improvements in tidal waters, and a riparian owner's rights with regard to such improvements, are generally coextensive. The Court said that a "county's power to zone extends only to those improvements which the riparian owner has a *right* to build into the water bounding its property, because it is only in relation to these improvements that the riparian has the right to the use of the submerged land upon which the improvement is constructed." 316 Md. at 500, 560 A.2d at 36. We took the position that the proposed construction of the restaurant, out in the creek, neither preserved access to the waters nor prevented erosion. Consequently, because the riparian owner did not have the right to construct the restaurant, Baltimore County did not have the power under its zoning authority to permit the construction. In reaching this conclusion, however, the Court added an important caveat, saying (316 Md. at 506, 560 A.2d at 39):

"That construction of the proposed restaurant would not, within the contemplation of § 9–201, constitute an improvement to preserve access to navigable water or to protect the shore against erosion is, of course, equally clear. Thus, even though Baltimore County may have authority to zone permitted riparian improvements, it is not presently empowered to permit construction of the restaurant in this case. Nevertheless, in furtherance of its plan, Maryland Marine may seek to acquire, by purchase or lease from the State Board of Public Works, that part of the State's submerged land upon which the restaurant is planned to be erected. Section 9–201 of the Wetlands Act provides that '[a] right covered in this subtitle does not preclude the [riparian] owner from developing any other use approved by the Board [of Public Works].' "

The *Harbor Island* and *Maryland Marine* opinions clearly support Anne Arundel County's contention that its zoning authority encompasses the extension of Holiday Point's piers for the purpose of creating additional boat slips. We first note that, because the *Harbor Island* and *Maryland Marine* opinions indicated that a county's zoning authority over improvements in the State's tidal waters, and a riparian owner's right to construct such improvements, were generally coextensive, any doubts concerning the County's zoning authority in this case might raise similar doubts concerning Holiday Point's right to wharf out. Nevertheless, the construction or extension of piers to create boat slips is obviously for the purpose of access to the water. Under the *Harbor Island* and *Maryland Marine* opinions, this is both within an adjacent owner's riparian rights and within a county's zoning authority. Moreover, even if there could be any doubt about the matter, the record shows that Holiday Point has received a license from the Board of Public Works for the extension of its marina facilities. As suggested in *Maryland Marine*, such license from the Board of Public Works may operate to extend both the rights of riparian landowners and the zoning authority of local governments.

Furthermore, as long as a zoning ordinance is otherwise within a county's zoning authority, the fact that a purpose of the regulation was to protect shellfish beds does not render the ordinance invalid. Protection of the environment and of natural resources has long been recognized as a valid purpose of local zoning and land use regulations. *See, e.g., Schultz v. Pritts*, 291 Md. 1, 20, 432 A.2d 1319, 1329 (1981) ("The various purposes of zoning regulations ... are ... 'to promote the conservation of natural resources; to prevent environmental pollution ...,'" quoting in part Code (1957, 1978 Repl.Vol.), Art. 66B, § 4.03); *Annapolis v. Annap. Waterfront Co.*, 284 Md. 383, 392–393, 396 A.2d 1080, 1085–1086 (1979) (holding that the City could consider the environmental effects of a proposed pier extension to create additional boat slips); *Norbeck v. Montgomery County*, 254 Md. 59, 63, 254 A.2d 700, 704 (1969) (upholding zoning regulations for the protection of open

space and watershed); *Ketchel v. Bainbridge Twp.*, 52 Ohio
St.3d 239, 242–243, 557 N.E.2d 779, 782 (Ohio 1990) *cert.
denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1178 (1991)
(holding that conservation of ground water and the mainte-
nance of a pollution-free water supply were proper objects of
zoning); 1 *Anderson's American Law of Zoning,* § 7.33, at
822–824 (4th ed. 1996) ("Conservation of resources is, of
course, an objective within" the zoning power. "[Z]oning has
been approved where it undertook to prevent water pollution,
to protect wetlands or other ecologically sensitive areas, to
preserve shoreline ecological values, to preserve agricultural
land, to prevent environmental damage due to quarrying, and
to preserve energy"). *See also* Arden H. Rathkopf & Daren
A. Rathkopf, *Rathkopf's The Law of Zoning and Planning,*
§§ 3.02.07, 25.01.01, 31.03.12 (4th ed.1997).

## B.

Holiday Point alternatively contends that state legislation
concerning shellfish, water quality, wetlands, and tidal waters
has preempted the County's right to legislate in these areas.

"Under our decisions, state law may preempt local
law in one of three ways: 1) preemption by conflict, 2) express
preemption, or 3) implied preemption." *Talbot County v.
Skipper,* 329 Md. 481, 487–488, 620 A.2d 880, 883 (1993)
(footnotes omitted). *See Allied Vending v. Bowie,* 332 Md.
279, 297–298, 631 A.2d 77, 86 (1993); *Howard County v.
PEPCO,* 319 Md. 511, 522, 573 A.2d 821, 827 (1990); *Board v.
Harker,* 316 Md. 683, 697, 561 A.2d 219, 226 (1989). In the
present case, Holiday point urges both preemption by conflict
and implied preemption.

## (1)

In arguing that Article 28, § 5–108(e), of the Anne
Arundel County Code conflicts with state law, Holiday Point
asserts that, under state law, "a marina with greater than 100
slips need only be separated by 200 feet from a shellfish bed
compared to the County's separation standard of 2,640 feet.

Accordingly, on its face there is a clear conflict." (Holiday Point's Reply Brief at 15–16).

Under Maryland law, with regard to asserted conflicts of the type claimed by Holiday Point, the controlling principle is as follows (*Talbot County v. Skipper, supra*, 329 Md. at 487 n. 4, 620 A.2d at 882–883 n. 4):

"A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law."

*See Coalition v. Annapolis Lodge*, 333 Md. 359, 380, 635 A.2d 412, 422 (1994); *Allied Vending v. Bowie, supra*, 332 Md. at 297 n. 12, 631 A.2d at 86 n. 12.

The principal alleged conflicting "state law" invoked by Holiday Point is neither a statute nor a regulation. Instead, Holiday Point relies on a document published by the Maryland Department of the Environment entitled "Assessment Guidelines For Determining Shellfish Growing Area Classifications In And Around Marinas." In the document, there is a reference to a 1987 letter from the Secretary of the Environment in which the Secretary stated that

"the minimum restricted areas around a marina are established as:

| | |
|---|---|
| 11–50 slips: | 100 feet |
| 51–100 slips: | 150 feet |
| > 100 slips: | 200 feet." |

The purpose of the document containing guidelines, as well as the 1987 letter incorporated by reference therein, was clearly not to prescribe the location of marina facilities. Instead, as stated in the "Introduction" to the document, the guidelines relate to "restrictions on shellfish harvesting in and around marinas" because of "sewage discharge from the marina[s]...." Furthermore, the "General Policy Specifications" of the document begin by stating: "This policy defines the restrictions on shellfish harvesting in and around marinas." The document was published pursuant to Code (1974, 1997 Repl.Vol.), § 4–742 of the Natural Resources Article. That

entire section, as its heading indicates, relates to restrictions on the taking of shellfish because of possible sources of pollution. It does not deal with restrictions upon the possible sources of the pollution, such as restrictions on the location of marinas.[5]

Assuming *arguendo* that the document relied on by Holiday Point can properly be viewed as "state law" for the purpose of the doctrine of preemption by conflict, there is no conflict between Article 28, § 5–108(e), of the Anne Arundel County Code and the state document. The local ordinance restricts the location of marina facilities, whereas the state document restricts the harvesting of shellfish. While both may be designed to further the ultimate public policy of protecting consumers from shellfish that may be dangerous to health, the local ordinance and the state document employ wholly different means to further such public policy. They regulate entirely separate and distinct activities.[6] Both courts below correct-

---

**5.** Section 4–742 of the Natural Resources Article begins as follows (emphasis added):

"**§ 4–742. Restrictions on taking of shellfish from polluted waters.**
(a) *Department of the Environment authorized to restrict area.*—If the Department of the Environment determines by appropriate investigation that any area of waters of the State devoted to the production of storage of shellfish is polluted so that shellfish produced or stored in the area are a hazard to public health, *it shall restrict the area for the catching or storing of shellfish*. If the Department of the Environment finds it necessary to restrict an area of water for the taking and storing of shellfish because of the proximity of the area to the point of discharge of a sewage treatment plant or a point of overflow of a sewage pumping station, the Department of the Environment may increase or decrease the size of a restricted area in relation to the operational effectiveness of the sewage treatment plant or sewage pumping station."

\* \* \*

**6.** It should be noted that, even if the state law had regulated the situs of marina facilities, and had provided that no such facilities could be constructed within 200 feet of a shellfish bed, it would not necessarily follow that the state law and the local ordinance would be in conflict. When state law simply regulates a matter to a limited extent, our cases have not ordinarily attributed to the General Assembly an intent to preempt local law regulating the matter to a greater extent. *Coalition v. Annapolis Lodge,* 333 Md. 359, 380–383, 635 A.2d 412, 422–424 (1994), and cases there discussed. Since, however, the "state law"

ly held that there was no preemption by conflict.[7]

### (2)

 Finally Holiday Point relies upon the doctrine of implied preemption, or, as it is sometimes called, preemption by occupation. The case-law dealing with this doctrine was recently summarized in *Talbot County v. Skipper, supra*, 329 Md. at 488–489, 620 A.2d at 883–884, as follows:

> "Generally, state law preempts by implication local law where the local law 'deal[s] with an area in which the [State] Legislature has acted with such force that an intent by the State to occupy the entire field must be implied,' *County Council v. Montgomery Ass'n*, 274 Md. 52, 59, 333 A.2d 596, 600 (1975). There is no particular formula for determining whether the General Assembly intended to preempt an entire area, *Howard County v. Pepco [PEPCO]*, 319 Md. 511, 523, 573 A.2d 821, 828 (1990), and several factors have been considered in our cases. *See, e.g., Board v. Harker*, 316 Md. 683, 698, 561 A.2d 219, 226–227 (1989); *National*

---

invoked by Holiday Point does not regulate the situs of marina facilities, we need not explore this issue in the present case.

**7.** While chiefly relying upon the state document restricting the harvesting of shellfish, Holiday Point also lists several state regulations which are claimed to conflict with the Anne Arundel County ordinance. Like the document, however, these regulations deal with matters which are separate and distinct from the requirements of the local zoning ordinance. All of the regulations relied upon are criteria for guiding state officials in granting or denying state wetlands permits. The co-existent relationship between such wetlands permits and local zoning was dealt with by us in *Harbor Island Marina v. Calvert County*, 286 Md. 303, 316–323, 407 A.2d 738, 745–749 (1979), and *People's Counsel v. Maryland Marine*, 316 Md. 491, 506–507, 560 A.2d 32, 39–40 (1989). Furthermore, several of these criteria concern dredging and filling operations. One of the regulations, COMAR 08.05.05.16, recodified as COMAR 26.24.04.03 in 1996, does set forth criteria for the grant or denial of a wetlands permit "for a new marina or marina expansion." This regulation contains no criteria specifying distances between piers and shellfish beds. More significantly, the regulation states that new marinas or the expansion of an existing marina shall be consistent with a local government's marina management plan and that "[i]f there is a conflict between a local marina management plan and this subtitle, the more stringent regulation takes priority."

*Asphalt v. Prince Geo's Co.,* 292 Md. 75, 78–80, 437 A.2d
651, 653–654 (1981); *Rockville Grosvenor, Inc. v. Mont. Co.,*
289 Md. 74, 92–93, 422 A.2d 353, 363 (1980); *County Coun-
cil v. Montgomery Ass'n, supra,* 274 Md. at 60–64, 333 A.2d
at 601–603.

"Nevertheless, we have stated that ' "[t]he primary indicia
of a legislative purpose to preempt an entire field of law is
the comprehensiveness with which the General Assembly
has legislated in the field." ' *Howard County v. Pepco
[PEPCO], supra,* 319 Md. at 523, 573 A.2d at 828, quoting
*Board v. Harker, supra,* 316 Md. at 696–697, 561 A.2d at
226. *See Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307,
328, 513 A.2d 893, 904 (1986); *National Asphalt v. Prince
Geo's Co., supra,* 292 Md. at 78–79, 437 A.2d at 653; *County
Council v. Montgomery Ass'n, supra,* 274 Md. at 61, 333
A.2d at 601."

Furthermore, even where the General Assembly so compre-
hensively covers an area that an intent to occupy the field
generally is implied, the General Assembly may also intend to
leave some specific matters in that field open to local legisla-
tion. In this situation, local legislation regarding those specif-
ic matters is obviously not preempted. *See Talbot County v.
Skipper, supra,* 329 Md. at 492, 620 A.2d at 885.

In arguing that Article 28, § 5–108(e), of the Anne
Arundel County Code is invalid under the doctrine of implied
preemption, Holiday Point asserts that "the State's regulation
over tidal wetlands, water quality and shellfish is so pervasive
that the State legislature clearly intended to occupy the field,
thereby preempting Anne Arundel County Code § 5–108(e)."
(Holiday Point's brief at 33). Holiday Point's characterization
of the relevant "field" of legislation, however, is overly broad.
It is similar to an argument that, because there is so much
state legislation pertaining to the environment, all local legisla-
tion pertaining to the environment is impliedly preempted.

As discussed in part (1) above, state regulation of the
harvesting of shellfish is quite distinct from the regulation of
the situs of piers. Likewise, state legislation in various fields

to insure healthful water quality is distinguishable from local zoning regulations restricting the length of piers.

The only comprehensive state statute which is applicable to all pier extensions into the tidal waters of the State, and which requires a state permit for every such pier extension, is the Wetlands Act of 1970. As earlier discussed, this Court has made it clear that local zoning regulations can properly apply to piers as extensions of the land even though the construction and extension of piers are also regulated by the state Wetlands Act. *See People's Counsel v. Maryland Marine, supra,* 316 Md. 491, 560 A.2d 32; *Harbor Island Marina v. Calvert County, supra,* 286 Md. at 316–323, 407 A.2d at 745–749. Moreover, as previously noted, *supra* n. 7, the administrative regulations under the Wetlands Act specifically authorize more "stringent" local regulations with respect to the "location of all new marinas or expansion of an existing marina." COMAR 26.24.04.03.F.

Consequently, there is no merit in Holiday Point's argument that Article 28, § 5–108(e), of the Anne Arundel County Code is impliedly preempted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO DISMISS THE DECLARATORY JUDGMENT ACTION. PETITIONER TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*